**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ABDULWAHAB NATTAH, et al.,    ) | |
|        ) | |
|     Plaintiff,      ) | |
|        ) | |
|     v.       ) | Civil Action No. 06-CV-00700 RCL |
|        ) | |
| GEORGE BUSH, et al.,       ) | |
|        ) | |
|     Defendants.      ) | |

## DEFENDANT L-3 COMMUNICATIONS TITAN CORPORATION'S MOTION TO DISMISS

Pursuant to Rules 8, 9(b), and 12(b)(1) and (6) of the Federal Rules of Civil Procedure and Rule 7 of the Rules of this Court, defendant L-3 Communications Titan Corporation ("L-3") hereby moves to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted and for lack of jurisdiction. Plaintiffs' filed a twenty count, 245-numbered-paragraph complaint against the United States Government and L-3, alleging contract, tort, statutory and constitutional claims, as well as several claims under international treaties. Only Counts VI-XX have been alleged against L-3. Those claims cannot survive dismissal under Rule 12(b) of the Federal Rules of Civil Procedure for the following reasons:

1.     Counts VI (Geneva Convention) and VII (Launching a War of Aggression Under the U.N. Charter) must be dismissed because Plaintiffs fail to allege any facts that would support their assertion that L-3 violated either the Geneva Convention or the U.N. Charter, and because neither treaty creates a private right of action against private entities like L-3.

2.      Counts VIII (Slavery) and X (Right to Travel) must be dismissed because they fail to provide L-3 with adequate notice of the claims asserted against it and fail to allow this Court to evaluate the legal grounds for Plaintiff's claims.

3.      Count XIII (Racial Discrimination in Contractual Relations) must be dismissed because the Court lacks jurisdiction over this claim under Title VII and 42 U.S.C. § 1981.

4.      Count XVI (Breach of Contract) must be dismissed because the "factual" allegations in this Count are plainly inconsistent with the terms of the alleged "contract" on which this claim is based and therefore fail to state a claim upon which relief may be granted.

5.      Count XIV (Fraud) must be dismissed because it fails to allege facts with the specificity required by the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure and fails to allege any misrepresentations by L-3.

6.      Count XV (Rehabilitation Act/Americans With Disabilities Act) must be dismissed for lack of subject matter jurisdiction because Plaintiff has not exhausted his administrative remedies.

7.      Count XVIII (Wrongful Termination) must be dismissed because Plaintiff has failed to plead sufficient facts to state a claim of wrongful discharge under Virginia law or the law of any other jurisdiction.  Furthermore, this claim must be dismissed under Virginia law because it is barred by Virginia's two year statute of limitations.

8.      Count XIX (Hours of Work and Overtime) must be dismissed because it fails to adequately specify the factual or legal basis of the claim.  It also fails to state a claim under the Fair Labor Standards Act or the Service Contract Act, because neither

statute applies extraterritorially.  Furthermore, this Count cannot state a claim under the law of any foreign country because Plaintiffs have failed to provide the notice required by Rule 44.1 of the Federal Rules of Civil Procedure of their intent to bring this claim under foreign law.

9.     Count XX, which has been redacted in its entirety from the Complaint, must be dismissed because it fails to provide L-3 with adequate notice of the claim asserted against it.

10.     Counts IX (Assault - German Law), XI and XII (alleging "Outrageous Conduct" and "Intentional Infliction of Emotional Distress" respectively under German Kuwaiti and Iraqi law), and XVII (Iraqi Labor and Social Affairs Notification) must be dismissed on the grounds of forum non conveniens because Plaintiff's chosen forum for these claims is clearly inappropriate.  Specifically, each of these claims is governed by foreign law, and involves parties who are not residents of Washington, DC and events and occurrences that allegedly took place outside of the United States.

This motion is supported by the Memorandum of Points and Authorities filed concurrently herewith.

Respectfully submitted,

_____/s/_____
Matthew H. Sorensen, D.C. Bar 492130
John F. Scalia (motion for admission *pro hac vice* forthcoming)
GREENBERG TRAURIG, LLP
1750 Tysons Blvd., Suite 1200
McLean, VA 22102
Tel:  (703) 749-1300
Fax:  (703) 749-1301
*Counsel for Defendant*
*L-3 Communications Titan Corporation*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ABDULWAHAB NATTAH, et al.,           ) | |
|                                                     ) | |
|            Plaintiff,                           ) | |
|                                                     ) | |
|            v.                                    )          Civil Action No. 06-CV-00700 RCL |
|                                                     ) | |
| GEORGE BUSH, et al.,                   ) | |
|                                                     ) | |
|            Defendants.                      ) | |
| _____) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT**
**L-3 COMMUNICATIONS TITAN CORPORATION'S MOTION TO DISMISS**

Pursuant to Rules 8, 9(b), and 12(b)(1) and (6) of the Federal Rules of Civil Procedure

and Rule 7 of the Rules of this Court, defendant L-3 Communications Titan Corporation ("L-3")

files this memorandum of points and authorities in support of its motion to dismiss for failure to

state a claim upon which relief can be granted and for lack of jurisdiction.  Plaintiff Abdulwahab

Nattah (purportedly representing other unnamed plaintiffs[1]) ("Plaintiff") has filed a twenty count

complaint against various officers of the United States Government and L-3, alleging a variety of

facially deficient contract, tort, statutory and constitutional claims.[2]  Of the twenty counts,

Plaintiff asserts Counts VI-XX against L-3.  For the reasons set forth below, all of Plaintiff's

claims against L-3 must be dismissed.

---

[1]  The question of whether Plaintiff may properly bring any of his claims on behalf of the class
he purports to represent need not be decided by this Court, because the entire complaint must be
dismissed for the reasons set forth below.
[2]  Counts I-V of the Complaint are asserted solely against the federal government.  On January
30, 2007, this Court granted the federal government defendants' motion to dismiss Plaintiff's
Complaint.

## STATEMENT OF FACTS

By letter dated January 17, 2003, Plaintiff received an offer of employment with L-3.

January 17, 2003 Letter from Greg Williams to Abdulwahab Nattah, attached hereto as Exhibit

1. The January 17th letter offered Plaintiff the position of CAT II Arabic Linguist in Kuwait and

proposed that his employment with L-3 would commence on or about January 19, 2003. Exhibit

1; Complaint, ¶39. The letter further stated that Plaintiff's offer of employment was "contingent

upon receipt of a task order, available funding for the task, and receipt and maintenance of any

and all necessary governmental approvals for working in a secure facility," and further noted that

should Plaintiff accept L-3's offer of employment he would become an "at-will" employee.

Exhibit 1. The letter identified a variety of benefits offered by L-3, such as life insurance, health

insurance, dental insurance, and long term disability, but made no mention of items such as

living quarters, telephone and mail services, running water or food. Ex.1. The letter further

stated that "nothing in [the] offer of employment constitute[s] an express or implied contract

between L-3 and any employee." Ex.1. Plaintiff accepted L-3's offer of employment by

countersigning the offer letter on January 17, 2003. Exhibit 1.

Plaintiff alleges that his employment "contract" with L-3 prohibited L-3 from deploying

him as a CAT II Arabic Linguist in any location other than Kuwait. Complaint, ¶39. After

becoming an L-3 employee, Plaintiff was deployed to Kuwait where he served as an Arabic

Linguist. Complaint, ¶¶ 40-41. Plaintiff alleges that while he was in Kuwait, L-3 breached its

alleged employment contract with him by failing to provide him the living arrangements it had

promised and requiring him to "consistently eat distasteful food and live under the most

wretched conditions." Complaint, ¶41. Plaintiff claims that L-3 later sold him as a slave to the

2

United States military, who in turn allegedly deployed Plaintiff into combat operations in Iraq. Complaint, ¶¶43-44.

Plaintiff claims that while he was deployed in Iraq, he was subjected to repeated deprivations of his civil rights and other hazardous conditions that left him with permanent injuries. Complaint, ¶¶45-52. He further alleges that as a result of his time in Iraq, he experienced loss of hearing, ringing in his ears, difficulty sleeping, and reoccurring nightmares. Complaint, ¶53.

Plaintiff claims that when he sought treatment for an injury to the left side of his head at an American Clinic in Iraq, he was sent to Germany for further examination. Complaint, ¶¶53-54. Plaintiff claims that, while in Germany, he attempted to contact his supervisor at L-3 to "request leave as a reasonable accommodation of disability," and that in response to his request for accommodation he was terminated by L-3. Complaint, ¶56. Plaintiff does not identify the reason he required leave as opposed to some other accommodation or the basis for his assertion that his alleged disability required accommodation. He does not even identify what his alleged disability was.

Plaintiff further alleges that while he was in Germany seeking medical attention, "two thugs" employed by L-3 entered his barracks, assaulted him, and ordered him to gather his belonging so that they might transport him to see a doctor for his injuries. Complaint, ¶57. Plaintiff claims that United States Military Police intervened and ordered the two men to leave, which they did. Complaint, ¶ 57.

Plaintiff claims that on June 22, 2003, he was admitted to the University of Hamburg Hospital and that he underwent surgery on June 23 and July 8, 2003 to address the problems he was experiencing with his hearing. Complaint, ¶¶58-59. Plaintiff alleges that despite these

3

surgeries, he lost all hearing in his left ear and was left with only partial hearing in his right ear. Complaint, ¶¶58-59, 66, 68.

Finally, Plaintiff alleges that in August of 2003, he received a letter from L-3, dated July of 2003, confirming that he had been terminated by L-3. Complaint, ¶63. Plaintiff does not allege that he ever filed a charge of discrimination with any state or federal agency regarding his employment or the termination thereof.

On April 19, 2006, Plaintiff filed his Complaint in this Court. Counts VI-XX are asserted against L-3.

Count VI alleges violations of the Geneva Convention related to Plaintiff's alleged service in Iraq. Count VII alleges a claim under the United Nations Charter for "launching a war of aggression." Counts VIII, X, and XIV allege claims for "Slavery," "Right to Travel," and "Fraud," respectively. Count XIII alleges that L-3 discriminated against Plaintiff on the basis of his race by terminating him and breaching his alleged employment contract. Count XV alleges violations of the Rehabilitation Act and the Americans With Disabilities Act arising from L-3's alleged failure to accommodate Plaintiff's alleged disability and termination of his employment. Count XVI alleges that L-3 breached Plaintiff's alleged employment contract by deploying him in Iraq and failing to provide him with certain living conditions. Count XVIII alleges a claim of wrongful termination. Count XIX alleges that L-3 violated certain unspecified wage and hour laws by requiring Plaintiff (and others) to work more than eight hours per day and by failing to pay Plaintiff (and others) overtime wages.

Plaintiff also has alleged several claims under foreign laws related to actions he claims took place while he was in Kuwait, Iraq and Germany. Count IX alleges assault under German law. Counts XI and XII allege claims for "Outrageous Conduct" and "Intentional Infliction of

Emotional Distress" respectively under Kuwaiti, Iraqi and German law.  Count XVII alleges a

class claim against L-3 under Iraqi labor law for terminating employees without informing the

Ministry of Labor and Social Affairs and the President of the General Federation of Employees'

Trade Unions of the terminations.

 Finally Plaintiff appears to allege Count XX against L-3.  However, Plaintiff has redacted

Count XX from the Complaint.

 L-3 now moves to dismiss these claims pursuant to Rules 8, 9(b), and 12(b)(1) and (6) of

the Federal Rules of Civil Procedure, and on the grounds of forum non conveniens.

**ARGUMENT**

**I.** **Standard Of Review.**

 Affirmative defenses are properly raised on a motion to dismiss pursuant to Federal Rule

of Civil Procedure 12(b).  *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 577 (D.C. Cir.

1998).  On a motion to dismiss, the Court must construe the allegations and facts in the

complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all

inferences that can be derived from the alleged facts.  *Kowal v. MCI Communications*, 16 F.3d

1271, 1276 (D.C. Cir. 1994).  However, it need not accept as true "a legal conclusion couched as

a factual allegation," nor inferences that are unsupported by the facts set out in the complaint.

*Trudeau v. Federal Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (*quoting Papasan v.

Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).  Under Rule 12(b)(6) the

reviewing court should dismiss a claim if the defendant can demonstrate "beyond doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Kowal*, 16 F.3d at 1276.

Under Rule 12(b)(1), Plaintiff bears the burden of establishing that the court has jurisdiction. *U.S. Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000). "'[P]laintiff's factual allegations in the complaint ... will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft,* 185 F.Supp.2d 9, 13-14 (D. D.C. 2001) (*quoting* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (2d ed. 1987)). Additionally, a court may consider material other than the allegations of the complaint in determining whether it has jurisdiction to hear the case (so long as it still accepts the factual allegations in the complaint as true). *Jerome Stevens Pharmaceuticals, Inc. v. FDA*, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005); *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 n. 3 (D.C. Cir. 1997); *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

## II.    Plaintiff Has Failed To State A Claim Against L-3 Under The Geneva Convention And United Nations Charter.

Plaintiff brings Count VI, under the Geneva Convention, alleging abuses of prisoners of war, and Count VII, under the United Nations Charter, alleging that L-3 initiated a war of aggression. Plaintiff fails to state a claim against L-3 under both treaties because he has not alleged any facts that, if taken as true, would establish that L-3 violated either treaty. Plaintiff also fails to state a claim against L-3 under the Geneva Convention because L-3 is not a signatory to the Convention and therefore cannot be subject to a claim thereunder. Plaintiff lacks standing to raise a claim under the United Nations Charter because that treaty is not self executing and does not provide a private right of action. *Comm. Of U.S. Citizens Living in Nicaragua v. Reagan*, 859 F.2d 929, 936 (D.C. Cir. 1988); *Holmes v. Laird,* 459 F.2d 1211, 1222 (D.C. Cir. 1972).

Plaintiff fails to state a claim against L-3 under either the United Nations Charter or the Geneva Convention because he has failed to allege any *facts* which, if taken as true, would support the assertion that L-3 violated these treaties.  Indeed, the factual allegations contained in Counts VI and VII are concerned solely with the acts of the federal government defendants. Neither Count recites any facts describing any alleged action by L-3.[3]

Article 132 of the Geneva Convention expressly states that "any alleged violation of the Convention" is to be resolved by a joint transnational effort "in a manner to be decided between the interested Parties."  Geneva Convention art. 132.  For this reason, courts have repeatedly held that the Geneva Convention does not "create private rights of action in the domestic courts of the signatory countries."  *Huynh Thi Anh v. Levi*, 586 F.2d 625, 629 (6th Cir. 1978); *see also Holmes v. Laird,* 459 F.2d at 1222 ("corrective machinery specified in the Geneva Convention itself is nonjudicial").  Although, in *Hamdan v. Rumsfeld*, __ U.S. __, 126 S.Ct. 2749, 2797, 165 L.Ed.2d 723 (2006), the Supreme Court recently held that the Third Article of the Geneva Convention can provide prisoners of war with a claim against the government in a habeas action, the present case is not a habeas action and therefore is not controlled by *Hamdan*.[4]  Furthermore, nothing in the *Hamdan* decision supports Plaintiff's assertion that he may bring a private right of action under the Geneva Convention against a private entity such as L-3.

---

[3]  Although Count VI does state that "Defendant [L-3] knew of and participated in the violations of the Geneva Convention alleged above, it provides no factual allegations to support this conclusion.  Such conclusory allegations are insufficient to state a claim upon which relief may be granted.

[4]  The present case is also distinguishable from *Hamdan* in that Plaintiff has brought claims under Articles 4 and 5 of the Geneva Convention, neither of which creates a private right of action.  *Hamdan*'s holding was narrowly tailored to Article 3 of the Geneva Convention.  It does not authorize prisoners of war to bring habeas actions in U.S. courts for the violation of any other article of the Convention.  The general rule that the Geneva Convention does not create a private right of action is therefore applicable to Plaintiff's claims under Articles 4 and 5 of the Convention.

Moreover, the plain language of the Geneva Convention itself demonstrates that it does not create a private right of action against private individuals or entities, such as L-3, who are not signatories to the Convention. Article 3 provides that:

In the case of armed conflict not of an international character occurring in the territory of one of the High Contracting Parties, each party to the conflict shall be bound to apply, as a minimum, the following provisions:

1. Persons taking no active part in the hostilities, including members of armed forces who have laid down their arms and those placed hors de combat by sickness, wounds, detention, or any other cause, shall in all circumstances be treated humanely, without any adverse distinction founded on race, colour, religion or faith, sex, birth or wealth, or any other similar criteria.

To this end the following acts are and shall remain prohibited at any time and in any place whatsoever with respect to the above-mentioned persons:

(a) Violence to life and person, in particular murder of all kinds, mutilation, cruel treatment and torture;

(b) Taking of hostages;

(c) Outrages upon personal dignity, in particular, humiliating and degrading treatment;

(d) The passing of sentences and the carrying out of executions without previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples.

2. The wounded and sick shall be collected and cared for.

An impartial humanitarian body, such as the International Committee of the Red Cross, may offer its services to the Parties to the conflict.

The Parties to the conflict should further endeavour to bring into force, by means of special agreements, all or part of the other provisions of the present Convention.

The application of the preceding provisions shall not affect the legal status of the Parties to the conflict.

Geneva Convention, art. 3. Article 2 identifies the "parties" bound by the Convention, noting that:

> In addition to the provisions which shall be implemented in peace time, the present Convention shall apply to all cases of declared war or of any other armed conflict which may arise between two or more of the High Contracting Parties, even if the state of war is not recognized by one of them.
>
> The Convention shall also apply to all cases of partial or total occupation of the territory of a High Contracting Party, even if the said occupation meets with no armed resistance.
>
> Although one of the Powers in conflict may not be a party to the present Convention, the Powers who are parties thereto shall remain bound by it in their mutual relations. They shall furthermore be bound by the Convention in relation to the said Power, if the latter accepts and applies the provisions thereof.

Geneva Convention, art. 2. The last paragraph of Article 2 makes clear that only parties to the Convention or countries that later accept and apply the provisions of the Convention are bound by its terms. Nothing in Article 2 suggests that the Convention imposes any obligations on private persons or entities. Thus, while the Convention may impose certain restrictions and requirements on the signatory nations that can be enforced in a habeas action, it does not impose any restrictions or requirements on private individuals or entities that may be enforced through private litigation. Accordingly, the Geneva Convention does not create a private right of action against private individuals and entities such as L-3.

Plaintiff's claim under the U.N. Charter also fails because that treaty contains no provision that would allow for its enforcement by private lawsuit under any circumstances whatsoever. *Comm. Of U.S. Citizens Living in Nicaragua v. Reagan*, 859 F.2d at 936. In *Comm. Of U.S. Citizens Living in Nicaragua*, the D.C. Circuit expressly held the United Nations Charter is not self executing and therefore does not confer rights on private individuals. *Id.* Accordingly, Plaintiff cannot state a claim under the United Nations Charter.[5]

For these reasons both Counts VI and VII must be dismissed.

---

[5]  L-3 also cannot be held liable under Plaintiff's United Nations Charter claim because, as a private company, it is incapable of launching a war of aggression.

### III. Plaintiff's "Slavery" And "Right To Travel" Counts Fail To State A Claim Upon Which Relief May Be Granted.

In Count VIII, "Slavery," and Count X, "Right to Travel," Plaintiff does not delineate any specific claims for relief; rather, he simply incorporates prior factual allegations by reference. These claims fail to meet the basic pleading standards of Rule 8 because Plaintiff has not identified the factual or legal basis for the claim or the relief he seeks. Under Rule 8(a), Plaintiff's Complaint must contain "a short and plain statement of the claim showing that [he is] entitled to relief, and a demand for judgment for the relief [he] seeks." Rule 8(a) Fed. R. Civ. P. Because Plaintiff fails to sufficiently identify the factual or legal basis for his slavery and right to travel claims, Counts VIII and X fail to provide L-3 with adequate notice of the claims asserted against it and fail to allow this Court to evaluate the legal grounds for Plaintiff's claims. *Wilkins v. Thomas*, 104 Fed.Appx. 140, 140-141, 2004 WL 1157768, at *1 (10th Cir. 2004); *Southfork of Eel River Environmental League v. U.S. Army Corps of Engineers*, 1997 WL 351087, at *9 n.14 (N.D. Cal. 1997) (plaintiffs failed to meet the requirements of Rule 8(a) where they failed to specify the legal basis for the claim). Accordingly, these claims must be dismissed.

### IV. Plaintiff Fails To State A Claim For Racial Discrimination In Contractual Relations.

Plaintiff's claim of "Racial Discrimination in Contractual Relations," Count XIII, also fails to identify any factual or legal basis upon which Plaintiff may recover. Neither Title VII nor 42 U.S.C. § 1981 provides any basis for Plaintiff to recover under the facts alleged in the Complaint.[6]

To the extent that Plaintiff's contractual discrimination claim is brought under Title VII, this Court lacks subject matter jurisdiction over the claim because Plaintiff has failed to exhaust his administrative remedies. Title VII requires that a person complaining of a violation file an

---

[6] Plaintiff does not even identify which of these statutes form the basis for his claim.

administrative charge with the EEOC and allow the agency time to act on the charge.  Only after

the EEOC has notified the aggrieved person of its decision to dismiss or its inability to bring a

civil action within the requisite time period can that person bring a civil action himself.  42

U.S.C. § 2000e-5(f)(1); *see also Williams v. Washington Metro. Area Transit Auth.*, 721 F.2d

1412, 1413 n. 1 (D.C. Cir. 1983) (construing the exhaustion of administrative remedies

requirement); *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 472 (D.C. Cir. 1976), *cert.*

*denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978) (same); *Babrocky v. Jewel Food*

*Co.*, 773 F.2d 857, 863 (7th Cir. 1985) (same).  District courts may not exercise jurisdiction over

Title VII claims for which an employee has failed to exhaust his administrative remedies.

*Bowden v. U.S.*, 106 F.3d 433, 437 (D.C. Cir. 1997); *see also Gillet v. King*, 931 F.Supp. 9, 12-

13 (D. D.C. 1996) (dismissing plaintiff's claim for failure to exhaust administrative remedies),

*aff'd*, 132 F.3d 1481 (D.C. Cir. 1997); *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996)

("Exhaustion of administrative remedies is a 'jurisdictional prerequisite' to suit under Title

VII.").  Because failure to exhaust administrative remedies is a bar to subject matter jurisdiction,

the burden is on the plaintiff as the party seeking federal jurisdiction to show, by competent

evidence, that he did exhaust.  *United States v. Hillcrest Health Ctr., Inc.*, 264 F.3d 1271, 1278

(10th Cir. 2001).  Plaintiff does not even allege that he filed a charge of discrimination with the

EEOC prior to filing his Complaint.[7]  Because plaintiff does not claim that he filed any such

charge, he cannot meet his burden of pleading exhaustion of administrative remedies and

therefore cannot establish that this Court has subject matter jurisdiction over his claim.

Accordingly, Plaintiff's racial discrimination in contractual relations claim must be dismissed to

the extent that claim is brought under Title VII.

---

[7]  Nor is there any evidence that Plaintiff ever filed such a charge with the EEOC.

Plaintiff also cannot state a valid claim of racial discrimination in contractual relations under 42 U.S.C. § 1981, because that statute does not apply extraterritorially. *Ofori-Tenkorang v. American Intern. Group, Inc.*, 460 F.3d 296, 303-304 (2d Cir. 2006) ("the plain text of Section 1981 unambiguously requires that a person be within the jurisdiction of the United States in order to assert rights under the statute."). All of the alleged acts upon which Plaintiff's race discrimination claim is based occurred when Plaintiff was *outside of the United States*. Plaintiff alleges that he was in Kuwait when he claims L-3 breached his employment contract by allegedly selling him into slavery, sending him into Iraq and denying him certain fringe benefits and living conditions.[8] Complaint, ¶¶41-44, 202, 204. Furthermore, Plaintiff states that he was in Germany when L-3 informed him that his employment had been terminated. Complaint, ¶56. Because none of these alleged discriminatory acts took place while Plaintiff was within the jurisdiction of the United States, they cannot form the basis of a claim under Section 1981. *Ofori-Tenkorang*, 460 F.3d at 304 ("the decision by a defendant in the United States to discriminate against employees abroad cannot serve as the basis for a claim pursuant to Section 1981."). This is true even though Plaintiff entered his employment relationship with L-3 within the United States. *Id.* (the plain language of Section 1981 demonstrates that Congress did not intend to allow those outside the territorial jurisdiction of the United States to raise Section 1981 claims merely because the relevant employment contract was initially formed in the United States). Therefore, Plaintiff's claim of racial discrimination in contractual relations also must be dismissed to the extent that it is asserted under Section 1981.

---

[8] As set forth in Section V below, Plaintiff cannot state a valid claim for breach of contract based on any of these alleged actions.

## V.     Plaintiff Fails To State A Claim For Breach Of Contract.

In Count XVI Plaintiff claims that L-3 breached an alleged employment contract that allegedly only allowed L-3 to deploy him in Kuwait, by "selling him to Rumsfeld for service in Iraq," and failing to "provide fringe benefits promised to plaintiff under the contract such as an apartment, food and recreational facilities."  Complaint, ¶¶216, 217.  These allegations fail to state a claim because they are plainly inconsistent with the terms of Plaintiff's offer letter, the alleged "contract" on which Plaintiff's breach of contract claim is based.[9]

The letter confirming plaintiff's offer of employment with L-3 states that plaintiff would be employed as a "CAT II Arabic Linguist in Kuwait," and that:

> [L-3] employees are provided a variety of benefits which include life insurance, health insurance (coverage for pre-existing medical conditions is limited under our health insurance plan), dental insurance and long term disability.  Benefits coverage is effective the first month following your start date.

Exhibit 1.  The letter further notes that "Employment at [L-3] is a voluntary relationship between the Company and each employee and nothing in this offer of employment constitutes an express or implied contract between [L-3] and any employee."  *Id.*

---

[9]  The Court may consider Plaintiff's offer letter without thereby converting this motion to dismiss into a motion for summary judgment because the offer letter is referred to in the Complaint (*see*, *e.g.*, Complaint, ¶¶39-41, 214, 215) and is integral to Plaintiff's claims.  *Wright v. Associated Ins. Cos.*, 29 F.3d 1244 (7th Cir. 1994); *see also Stahl v. U.S. Dept of Agriculture*, 327 F.3d 697 (8th Cir. 2003) (in a case involving allegations of breach of contract, the court may examine the alleged contract documents in considering a motion to dismiss without converting a motion to dismiss to a motion for summary judgment); *Chem Tek, Inc. v. General Motors Corp.*, 816 F.Supp.123 (D. Conn. 1993) (if plaintiff relies on a document, but fails to attach it, the court may consider the document without converting it into a motion for summary judgment).

This offer letter plainly states that it is not a contract.  Accordingly, even if L-3 did not adhere to the statements made in the offer letter, that fact cannot form the basis of a breach of contract claim.  In other words, the offer letter cannot support a breach of contract claim.[10]

Even if the offer letter could be construed as a contract, the plain terms of the letter neither prohibit L-3 from deploying Plaintiff to other locations after his deployment in Kuwait nor require L-3 to provide Plaintiff with any of the particular "fringe benefits" he claims he did not receive.  As to the deployment allegation, while L-3 offered Plaintiff employment in the position of CAT II Arabic Linguist in Kuwait, nothing in that offer expressly or impliedly prohibited L-3 from later deploying Plaintiff to some other location.[11]  As to the benefits allegation, none of the alleged "fringe benefits" that Plaintiff claims were part of the alleged contract are even mentioned in his offer letter.  Specifically, Plaintiff claims that L-3 agreed to provide him with "a luxury air-conditioned apartment building, including a fitness center and pool," his own bedroom and bathroom, running water, electricity, mail service, phone service, and access to restaurants and stores.  Complaint, ¶36.  However, no such promises appear anywhere in the offer letter.  In short, none of the alleged breaches finds support in the terms of the alleged contract on which Plaintiff relies.

In any event, even if the Court were to find that L-3 owed Plaintiff any of the alleged obligations, L-3 nevertheless had the power to change any and all of those obligations at its

---

[10]  Insofar as Plaintiff's breach of contract claim is not based on the offer letter, the claim must be dismissed pursuant to Rule 8 because, by failing to identify the alleged contract on which the claim is based, Plaintiff has failed to provide L-3 with adequate notice of the claims asserted against it and has also failed to plead sufficient facts to allow this Court to evaluate the legal grounds for Plaintiff's claims.  *Wilkins*, 104 Fed.Appx. at 140-141, 2004 WL 1157768, at *1; *Southfork of Eel River Environmental League*, 1997 WL 351087, at *9 n.14.

[11]  Plaintiff alleges that he was, in fact, deployed in Kuwait as an Arabic Linguist (Complaint, ¶¶40-41), essentially admitting that L-3 performed its promise to deploy him in Kuwait.  Even assuming Plaintiff was later sent from Kuwait to Iraq, as he claims, nothing in his offer letter prohibited L-3 from doing so.

discretion because Plaintiff was an "at will" employee. The power to terminate necessarily

includes the power to make lesser modifications in the terms and conditions of employment.

*White v. Federal Express Corp.*, 729 F.Supp. 1536, 1547-48 (E.D. Va. 1990); *Lewis v. NVT*

*Technologies, Inc.*, 118 F.Supp. 2d 51, 54 (D. D.C. 2001). Accordingly, even if L-3 changed the

location where Plaintiff was to perform his work or the "fringe benefits" it offered, it was free to

do so at its discretion, because its employment relationship with Plaintiff was "at will." Of

course, Plaintiff did not have to accept any perceived change in the terms and conditions of his

employment with L-3. His remedy as an at will employee was to terminate his employment

relationship with L-3 rather than accept the changed employment terms.

     Accordingly, Plaintiff's breach of contract claim must be dismissed.

## VI.    Plaintiff's Fraud Claim Must Be Dismissed Because Plaintiff Has Not Pled That Claim With The Requisite Degree of Particularity.

     Rule 9(b) requires that a plaintiff state with particularity the circumstances on which a

fraud claim is based. Rule 9(b) Fed. R. Civ. P. Rule 9(b)'s particularity requirement ensures that

the defendant has notice of the claim, prevents attacks on the defendant's reputation where the

claim for fraud is unsubstantiated, and protects the defendant against suits brought solely for

their settlement value. *Shields v. Wash. Bancorp.*, 1992 WL 88004, at *4 (D. D.C. 1992)

(Lamberth, J.); *see also Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1279 n.3 (D.C.

Cir. 1994) (observing that Rule 9(b) aims to prevent a claim filed as a "pretext for the discovery

of unknown wrongs" (citation omitted)); *Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771,

777-78 (7th Cir. 1994) (recognizing that Rule 9(b) is largely designed to give each opponent

notice of his purported role in the alleged fraud); *DiVittorio v. Equidyne Extractive Indus., Inc.*,

822 F.2d 1242, 1247 (2d Cir. 1987) (same).

Under Rule 9(b), the circumstances that the plaintiff must plead with particularity include matters such as the time, place, and content of the false misrepresentations, the misrepresented fact, the identity of the individuals who made the misrepresentations, and what the opponent retained or the claimant lost as a consequence of the alleged fraud. *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551-52 (D.C. Cir. 2002); *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990), *cert. den'd*, 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990). A fraud claim may not rest on information and belief, but must include an allegation that the necessary information lies within the opponent's control, accompanied by a statement of the facts on which the plaintiff bases his claim. *Kowal*, 16 F.3d at 1279 n. 3.

Plaintiff's fraud claim fails to meet this heightened pleading standard. As with his "Slavery" and "Right to Travel" claims, Plaintiff does not allege any specific facts supporting his fraud claim. By simply incorporating several preceding paragraphs by reference, Plaintiff renders it impossible for L-3 to determine what, if any, misrepresentations Plaintiff is claiming L-3 made. (Indeed most of the alleged misrepresentations that Plaintiff identifies in his complaint were made by officers or employees of the United States.) Furthermore, Plaintiff nowhere identifies the employees, agents or representatives of L-3 whom he contends made any misrepresentations; nor does he identify the time when or place where any alleged misrepresentations were made. Similarly, Plaintiff does not identify anything that he lost as a direct result of the alleged fraud. Accordingly, Plaintiff's fraud claim fails to meet the standards of Rule 9(b) and must be dismissed.

**VII.  Plaintiff's Claim Under The Rehabilitation Act And Americans With Disabilities Act Must Be Dismissed Because He Has Failed To Exhaust His Administrative Remedies.**

In actions brought under the Rehabilitation Act and the ADA, as in actions brought under Title VII, a court has jurisdiction over only claims for which the plaintiff exhausted his administrative remedies.  *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *Ward v. Kennard*, 133 F.Supp.2d 54, 61 (D. D.C. 2000); *Caldwell v. ServiceMaster Corp.*, 966 F.Supp. 33, 49 (D. D.C. 1997).  When a plaintiff has failed to exhaust his administrative remedies, the court must dismiss his claim for lack of jurisdiction.  *Rann v. Chao*, 346 F.3d 192, 194-95 (D.C. Cir. 2003); *Gillet v. King*, 931 F.Supp. 9, 12-13 (D. D.C. 1996).  Here, Plaintiff has not alleged that he filed an administrative charge with the EEOC and received a right to sue notice from the EEOC with respect to his Rehabilitation Act and Americans With Disabilities Act claim.  For this reason alone, Plaintiff's Rehabilitation Act and Americans With Disabilities Act claim must be dismissed.

**VIII.  Plaintiff Has Failed to State A Claim Of Wrongful Termination.**

Count XVIII of the Complaint alleges that L-3 wrongfully terminated Plaintiff because its stated reasons for terminating him "were false, mistaken, and vexatious."  Complaint, ¶234.  Plaintiff does not identify the particular jurisdiction whose laws must govern this claim.  However, under the District of Columbia's choice of law rules, Virginia law must govern because it is the jurisdiction with the most significant relationship to this dispute and Plaintiff has waived the right to seek adjudication of this issue under foreign law by failing to provide the notice required by Rule 44.1 of the Federal Rules of Civil Procedure.  Plaintiff fails to state a claim for wrongful discharge under Virginia law.  Furthermore, even if the Court were to apply

the law of some other jurisdiction to Plaintiff's claim, he has alleged no *facts* that would support the conclusory allegation that he was wrongfully terminated.

While the Complaint alleges that the Plaintiff's injury occurred abroad and that his relationship with L-3 was centered abroad, it does not state whether Plaintiff is asserting his wrongful termination claim based on the laws of some foreign country. In any event, Plaintiff cannot do so, because he has failed to provide the notice of his intention to raise an issue of foreign law required by Rule 44.1. Accordingly, he has waived his right to request that foreign law be applied to his claims. *Whirlpool Fin. Corp. v. Sevaux*, 96 F.3d 216, 221 (7th Cir. 1996) (party waived conflicts of law issue because it failed to fulfill its obligation under Rule 44.1 "to provide the district court with 'reasonable notice' of his intention to raise an issue of foreign law."); 441 Restatement (Second) Conflict of Laws § 136 cmt. f (1971) ("The party who claims that the foreign law is different from the local law of the forum has the burden of establishing the content of the foreign law."). Accordingly, in determining which jurisdiction has the greatest interest in Plaintiff's wrongful discharge claim, the Court is limited to the states and territories within the jurisdiction of the United States.

In a diversity case, such as this, "the law of the forum state supplies the applicable choice-of-law standard." *Williams v. First Gov't Mortgage & Investors Corp.*, 176 F.3d 497, 499 (D.C. Cir. 1999) (*citing Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Under District of Columbia law, courts employ "a modified governmental interests analysis which seeks to identify the jurisdiction with the most significant relationship to the dispute." *Washkoviak v. Student Loan Marketing Ass'n*, 900 A.2d 168, 180 (D.C. 2006) (internal quotations omitted). Under this analysis, the Court must: evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy

would be more advanced by the application of its law to the facts of the case under review; and consider the four factors enumerated in the Restatement (Second) of Conflict of Laws § 145: (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship is centered. *Id.*

In the present case, these factors require the application of Virginia law. Plaintiff is a resident of the state of California and L-3 is a resident of Virginia. The employment relationship between L-3 and Plaintiff was entered in Virginia, and the employment decision on which Plaintiff's claim is based took place in Virginia. To the extent that the parties' relationship can be said to have been centered in any part of the United States, that relationship was centered in Virginia. None of the remaining factors favors any other jurisdiction within the United States. Furthermore, the forum jurisdiction has no interest in any of the factors set forth in the Restatement, as neither party is a District resident, and none of the acts and events on which Plaintiff's wrongful termination claim is based occurred in the District. Accordingly, Virginia has the greatest interest in the application of its law.

Under Virginia law, Plaintiff's wrongful discharge claim fails as a matter of law. Under Virginia law, where no specific time is fixed for the duration of an employment, there is a presumption that it is an employment at will, terminable at any time by either party. *Hoffman Co. v. Pelouze*, 158 Va. 586, 594, 164 S.E. 397, 399 (1932); *Title Ins. Co. v. Howell*, 158 Va. 713, 718, 164 S.E. 387, 389 (1932). The only exception to Virginia's at-will doctrine is "when the discharge is in response to the employee's refusal to commit an unlawful act or in the employee's exercise of a statutory right." *Haigh v. Matsushita Elec. Corp. of America*, 676 F.Supp. 1332, 1351 (E.D. Va. 1987). Here, there is no question that Plaintiff's employment

relationship with L-3 was "at will." His offer letter states so expressly. Thus, under Virginia law, L-3 was free to terminate Plaintiff's employment for any reason whatsoever, so long as it did not terminate him for refusing to commit an unlawful act or in retaliation for his exercise of a statutory right. Nowhere in the Complaint does Plaintiff allege that he was terminated for refusing to commit an unlawful act or in the exercise of any statutory right; rather, he simply contends that the stated reasons for his termination were false, mistaken and vexatious. These allegations fail to establish a cause of action for wrongful discharge under Virginia law.

Even if Plaintiff could state a claim for wrongful termination by establishing that the stated reasons for his termination were false, mistaken and vexatious, he has failed to allege any *facts* that would demonstrate that the stated reasons for his termination were false, mistaken and vexatious. Plaintiff does not even identify the stated reasons for his termination. Nor has he alleged any other facts that would indicate that he was wrongfully terminated. He merely recites his own statements of the law of wrongful discharge and the legal conclusion that L-3's stated reasons for terminating him were false, mistaken and vexatious. Such legal conclusions are insufficient to defeat a motion to dismiss. *Trudeau v. Federal Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (*quoting Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)) (legal conclusions couched as factual allegations are insufficient to defeat a motion to dismiss).

Plaintiff's wrongful termination claim also fails under Virginia law because it is barred by the applicable statute of limitations. Virginia Code § 8.01-248 states that "every personal action for which no limitation is otherwise prescribed, shall be brought within two years after the right to bring such action has accrued." In *Purcell v. Tidewater Const. Corp.*, the Virginia Supreme Court held that a suit for money damages arising from wrongful termination is a

20

personal action subject to the two year limitation period of Code § 8.01-248. *Purcell*, 250 Va. 93, 94-96, 458 S.E.2d 291, 292-293 (1995). Plaintiff alleges that he was terminated by L-3 in June of 2003 and that he received a letter confirming his termination in August of 2003. Compl., ¶¶55-56, 63-64. However, he did not file his complaint until April of 2006, over six months after the two year limitations period for his wrongful termination claim expired.

For these reasons, Plaintiff's wrongful termination count fails to state a claim upon which relief may be granted and must be dismissed.

## IX.    Plaintiff Has Failed To State A Claim Regarding His Work Hours And Overtime Upon Which Relief May Be Granted.

In Count XIX, Plaintiff asserts what purports to be a wage and hour claim against L-3. Plaintiff's wage and hour claims are factually and legally deficient for at least three reasons.

First, because Plaintiff fails to adequately specify the legal basis for these claims, L-3 does not have adequate notice of the claims asserted against it and this Court cannot properly evaluate the legal grounds for Plaintiff's claims. *Wilkins v. Thomas*, 104 Fed.Appx. 140, 140-141, 2004 WL 1157768, at *1 (10th Cir. 2004); *Southfork of Eel River Environmental League v. U.S. Army Corps of Engineers*, 1997 WL 351087, at *9 n.14 (N.D.Cal. 1997).

Second, to the extent that Plaintiff has brought his wage and hour claims under either the Fair Labor Standards Act or the Service Contract Act, these claims must be dismissed because neither statute applies extraterritorially. *See* 29 C.F.R. § 776.7 (the Fair Labor Standards Act's coverage is limited to: the 50 states of the United States; the District of Columbia; Puerto Rico; the Virgin Islands; the Outer Continental Shelf Lands defined in the Outer Continental Shelf Lands Act; American Samoa; Guam; Wake Island; Enewetok Atol; Kwajelein Atoll; Johnson Island; and the Canal Zone); 41 U.S.C.A. § 351 (the Service Contract Act's coverage is limited to "contract[s] (and any bid specification therefor) entered into by the United States … the

21

principal purpose of which is to furnish services *in the United States* through the use of service employees").

Finally, Plaintiff may not assert wage and hour claims under the law of any foreign nation because by failing to provide the notice required by Rule 44.1 of the Federal Rules of Civil Procedure, he has waived his right to request that foreign law be applied to those claims. *Whirlpool Fin. Corp. v. Sevaux,* 96 F.3d 216, 221 (7th Cir. 1996); 441 Restatement (Second) Conflict of Laws § 136 cmt. f (1971).

## X.    Count XX Must Be Dismissed Because It Fails To Meet The Pleading Requirements Of Rule 8.

Plaintiff inexplicably has redacted Count XX from the Complaint.  By doing so, he has left L-3 with no way of determining what the factual or legal basis for this claim is, and has therefore failed to meet the basic pleading requirements of Rule 8(a).  Rule 8(a) Fed. R. Civ. P.; *Wilkins*, 104 Fed.Appx. at 140-141, 2004 WL 1157768, at *1; *Southfork of Eel River Environmental League*, 1997 WL 351087, at *9 n.14.  Accordingly, Count XX must be dismissed.

## XI.    The Court Should Dismiss Plaintiff's Claims Under German, Kuwaiti and Iraqi Law Under The Doctrine Of Forum Non Conveniens.

The doctrine of forum non conveniens allows the Court to dismiss an action where the balance of the private and public interests in the litigation clearly weigh in favor of requiring the parties to conduct the trial in an alternative forum from the one chosen by the plaintiff.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981).  Here, Plaintiff's chosen forum for his claims under German, Kuwaiti and Iraqi law is so completely inappropriate as to require the dismissal of those claims.

The U.S. Supreme Court has enumerated the factors relevant to determining whether the public and private interests favor dismissal on the grounds of forum non conveniens. Factors relevant to the private interests of the litigants include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) the possibility of viewing premises, if view would be appropriate to the action; (5) all other practical problems concerning the ease, expedition and expense of the trial; (6) the enforceability of a judgment once obtained; (7) evidence that the plaintiff attempted to harass the defendant by his choice of forum; and (8) the relative advantages and obstacles to fair trial. *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). Factors pertaining to the public interest include: (1) administrative difficulties caused by local court dockets congested with foreign litigation; (2) the local interest in having localized controversies decided at home; (3) the unfairness of imposing the burden of jury duty on the citizens of a forum having no relation to the litigation,[12] and (4) the avoidance of unnecessary problems in conflict of laws and in the interpretation of the laws of another jurisdiction. *Id.* The need to apply foreign law favors dismissal. *See*, *e. g.*, *Membreno v. Costa Crociere S.p.A.*, 425 F.3d 932, 938 (11th Cir. 2005) ("the need to apply foreign law is a public-interest factor that mitigates strongly in favor of dismissal"); *Calavo Growers of California v. Belgium*, 632 F.2d 963, 967 (2d Cir. 1980), *cert. denied*, 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981). Application of these factors requires a finding that this Court is not the appropriate forum for Plaintiff's foreign law claims.

---

[12] Indeed, the D.C. Circuit Court of Appeals has held that where it is shown that neither party resides in the District of Columbia and the plaintiff's claim has arisen in another jurisdiction which has more substantial contacts with the cause of action, the burden normally allocated to the defendant to demonstrate why dismissal is warranted for forum non conveniens rests instead upon the plaintiff to show why it is not. *Nee v. Dillon,* 239 F.2d 953, 955 (D.C. Cir. 1956); *see also Pain v. United Technologies Corp.*, 637 F.2d 775, 784 (D.C. Cir. 1980).

To examine the relative ease of access to evidence, the ability to compel the attendance of witnesses and the cost of obtaining the attendance of witnesses, a district court must "scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's causes of action and to any potential defenses to the action." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988). Plaintiff's assault claim (Count IX) alleges events that occurred entirely in Germany and depends on the interpretation of German law. The primary form of evidence required by the parties with respect to this claim will be the testimony of witnesses to the alleged assault. However, given that Plaintiff has alleged that the events in question took place in Germany, many if not all of those witnesses, including Plaintiff's roommate in Germany and the Military Police that allegedly came to his aid, will likely be located in Germany. Plaintiff's claims of "Outrageous Conduct" and "Intentional Infliction of Emotional Distress" (Counts XI and XII respectively) are also based on alleged events that took place outside of the United States and involve questions of foreign law. These claims, which concern the manner in which Plaintiff was allegedly treated by L-3 and the United States military, will also likely depend largely on the testimony of witnesses in Kuwait, Iraq and Germany with whom Plaintiff worked. Similarly, Plaintiff's claims under the Iraqi labor and social affairs notification law (Count XVII) involve foreign law, and will likely depend on witnesses and documents located in Iraq. Specifically, Plaintiff has alleged that L-3 terminated thousands of employees working in Iraq and failed to comply with a mandatory duty under Iraqi law to inform the Ministry of Labor and Social Affairs and the President of the General Federation of Employees' Trade Unions when it terminated these employees. Complaint, ¶¶226,

24

228.  Resolution of this claim will likely require the procurement of documents and witnesses from the Iraqi government.

Were the parties forced to litigate this case in the District of Columbia, gaining access to the many if not all of the witnesses and documents relevant to Plaintiff's foreign law claims would be exceptionally difficult and expensive.  German, Kuwaiti and Iraqi courts would, on the other hand, be able to afford the parties access to the witnesses and documents at significantly less expense.  As such, the first three private factors in the forum non conveniens analysis weighs against jurisdiction in the District of Columbia.  *Exter Shipping Ltd. v. Kilakos*, 310 F.Supp.2d 1301, *1324 (N.D. Ga. 2004).

The fourth private factor in the forum non conveniens analysis (the possibility of viewing the premises) also weighs in favor of dismissal.  Plaintiff claims that he was forced to "live under the most wretched conditions," without phone, mail air-conditioning, running water or electricity.  Complaint, ¶41.  In order for the parties to prove or refute these facts, it may be necessary for the Court or the parties to conduct an inspection of the premises where Plaintiff lived during his employment in Kuwait.  This will be virtually impossible if the trial is conducted in the United States.  By contrast, were the case tried in Iraq or Kuwait, the courts in those jurisdictions could access those same premises far more easily and with far less expense.

In addition, a number of practical problems would arise should Plaintiff be permitted to pursue his foreign law claims in this Court.  Most notably, the Court and the parties will have to interpret the laws of three separate foreign countries.  This will require the parties to obtain legal experts in the laws of these foreign countries in addition to their current attorneys for purposes of resolving these claims.  This will significantly increase the costs of litigating this matter in this jurisdiction.  By contrast if these claims are litigated in Kuwait, Iraq or Germany, the parties

could simply obtain local attorneys in those jurisdictions who are familiar with the relevant laws, and thereby eliminate the added expense of educating their U.S. counsel as to issues of foreign law.

Furthermore, all of the public interest factors of the forum non conveniens analysis favor the dismissal of the present case. Here, because neither party is a resident of the forum jurisdiction, and the acts alleged in the Plaintiff's foreign law claims have no relation to the forum jurisdiction, there is absolutely no public interest that would justify the burdens that trying Plaintiff's foreign law claims would impose on this Court's docket. The issues presented by Plaintiff's foreign law claims pertain to controversies that arose thousands of miles away from this jurisdiction and will also raise unnecessary problems of conflict of laws and the interpretation of foreign law. Furthermore, allowing Plaintiff to proceed to trial on his claims under German, Kuwaiti and Iraqi law will have the unfair effect of imposing the burden of jury duty on the citizens of a forum that has no relation to the litigation. In similar situations involving parties residing outside of the District whose claims arise from events that transpired outside of the District, D.C. Courts have granted dismissals on the grounds of forum non conveniens recognizing the decisiveness of the public interest in reducing the volume of cases on their overcrowded court calendars. *See*, *e.g.*, *Mobley v. Southern Railway Co.*, 418 A.2d 1044, 1049 (D.C. 1980); *Haynes v. Carr*, 379 A.2d 1178, 1180 (D.C. 1977); *Carr v. Bio-Medical Applications of Washington, Inc.*, 366 A.2d 1089, 1092 (D.C. 1976).

The aforementioned factors weigh against this Court's exercise of jurisdiction over Plaintiff's foreign law claims. Accordingly, those claims should be dismissed.

## <u>CONCLUSION</u>

For the reasons set forth above in detail, Defendant L-3 respectfully requests that the

Court dismiss Plaintiff's Complaint without leave to amend.

Respectfully submitted,


_____/s/_____
Matthew H. Sorensen, D.C. Bar 492130
John F. Scalia (motion for admission *pro hac vice* forthcoming)
GREENBERG TRAURIG, LLP
1750 Tysons Blvd., Suite 1200
McLean, VA 22102
Tel:  (703) 749-1300
Fax:  (703) 749-1301
*Counsel for Defendant*
*L-3 Communications Titan Corporation*

27

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

ABDULWAHAB NATTAH, et al.,            )
                                      )
           Plaintiff,                 )
                                      )
      v.                              )        Civil Action No. 06-CV-00700 RCL
                                      )
GEORGE BUSH, et al.,                  )
                                      )
           Defendants.                )
_____)

**ORDER**

Upon consideration of Defendant L-3 Communications Titan Corporation's Motion To

Dismiss, and of the entire record, and it appearing to the Court that the granting of Defendant's

motion would be just and proper, it is by the Court this _____ day of

_____, 2007,

ORDERED that Defendant L-3 Communications Titan Corporation's Motion to Dismiss

be, and is, granted, and it is further

ORDERED that this case as it pertains to Defendant L-3 Communications Titan

Corporation be, and is, dismissed with prejudice.

_____

UNITED STATES DISTRICT JUDGE

Copies to:

Marina Utgoff Braswell
Assistant United States Attorney
U.S. Attorney's Office
Judiciary Center Building
555 4th Street, N.W.,
Washington, D.C. 20530


Michael Beattie, Esq.
9502B Lee Highway
Fairfax, VA 22031


Matthew H. Sorensen
John F. Scalia
GREENBERG TRAURIG, LLP
1750 Tysons Blvd., Suite 1200
McLean, VA 22102