IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ABDULWAHAB NATTAH, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-CV-00700 RCL |
| | ) | |
| GEORGE BUSH, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT L-3 COMMUNICATIONS TITAN CORPORATION'S
REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

Replete with patently absurd factual allegations, demonstrably incorrect statements of law and bizarre legal theories,[1] Plaintiff's opposition to Defendant L-3 Communications Titan Corporation's motion to dismiss is even more incomprehensible and unsound than the complaint itself.[2] The arguments in Plaintiff's opposition should be rejected, and the complaint dismissed with prejudice. *See Marshall v. National Association of Letter Carriers BR36*, 2003 WL 22519869, *5 (S.D.N.Y. 2003) (finding

---

[1] L-3's counsel is not in the practice of employing such strong language when challenging an opponent's pleadings and papers. In this case, however, such language is the only appropriate way to describe the deficiencies in Plaintiff's complaint and opposition. Indeed, the website that Plaintiff and his counsel have created for this case suggests that this suit was filed for no other reason than to publicize their dissatisfaction with the U.S. Government's war in Iraq. *See http://www.antiwarattorney.org*, (a copy of the homepage for this website is attached hereto as Exhibit 1).

[2] In the introduction of his opposition Plaintiff vaguely suggests that he hopes to file an amended complaint to "clarify and refine" his claims and join an additional plaintiff and additional, unidentified defendants. Opp., p. 1. Because any such amendments would be futile, this Court should reject any motion by Plaintiff for leave to amend his complaint.

dismissal appropriate where plaintiff's claims simply "involved his writing down legal terms, without supporting facts, that make no sense.").[3]

With respect to his "foreign law" claims in particular, Plaintiff's opposition, like his complaint, fails to even identify the specific laws on which he rests his claims. He identifies no Iraqi, Kuwaiti or German statute, regulation, decisional law or other legal authority that would indicate that he has stated viable claims under the laws of those countries. Indeed, it seems to be Plaintiff's overall strategy in this case to escape the factual and legal deficiencies of his claims under U.S. law by resorting to vague claims under unidentified foreign "laws." Such a strategy, if tolerated, would undermine the U.S. legal system by allowing a litigant to ignore well-established legal standards in favor of unidentified and perhaps non-existent foreign law.

## I.    Plaintiff's Opposition Fails To Demonstrate That He Has Stated A Valid Claim Under The Geneva Convention.

L-3 is more than a little baffled by Plaintiff's arguments with respect to his Geneva Convention claim (a recurring problem in replying to Plaintiff's opposition). What is clear, however, is that Plaintiff has failed to present any cogent argument that the Geneva Convention creates a private right of action to recover damages against a private corporation. As set forth in L-3's moving brief, the plain language of the Geneva

---

[3] Plaintiff has consented to the dismissal of his UN Charter claim (Count VII), his wrongful termination claim (Count XVIII), his False Claims Act claim (Count XX), his Rehabilitation Act/ADA claim (Count XV) insofar as it alleges a claim under the ADA, and his Racial Discrimination In Contractual Relations claim (Count XIII) (which he calls his Title VII and 42 U.S.C. § 1981 claim). Because Plaintiff has agreed to dismiss those claims, L-3 need not address them in this reply.

Convention establishes quite clearly that it is enforceable only against signatory nations, not against private corporations. And the Geneva Convention contains no provisions authorizing civil suits for damages of any kind.

Unable to identify any provision of the Geneva Convention that creates such a private right of action against a private corporation, Plaintiff instead cites the Supreme Court's recent decision in *Hamdan v. Rumsfeld*, __ U.S. __, 126 S.Ct. 2749, 165 L.Ed.2d 723 (2006) for the proposition that the entire Geneva Convention is "judicially enforceable." But *Hamdan* merely held that Common Article 3 was enforceable against the federal government in a habeas corpus action by a prisoner of war subject to trial in U.S. military courts (because compliance with the Geneva Convention is mandatory under the Uniform Code of Military Justice). *Hamdan*, 126 S.Ct. at 2794. The case did not hold that the Geneva Convention creates a private right of action for damages against a private corporation such as L-3.

Plaintiff also appears to argue (although it is anything but clear) that he somehow can enforce the Geneva Convention against L-3 under the Alien Tort Claims Act, the Torture Victims Protection Act and the War Crimes Act. Plaintiff has not actually stated a claim under any of these statutes *in his Complaint*. In any event, none of these statutes allows Plaintiff to bring a civil suit for damages against L-3 for violations of the Geneva Convention. In fact, none of these statutes is even remotely applicable to Plaintiff's claims against L-3. The Alien Tort Claims Act is limited to claims brought by "aliens" (28 U.S.C. § 1350), and Plaintiff himself alleges that he is a U.S. citizen, not an alien (Complaint, ¶13). The Torture Victims Protection Act only applies against natural

3

persons, not corporations such as L-3 (and, furthermore, Plaintiff does not allege that he was subjected to "torture or an extrajudicial killing" as required under that statute). *Doe I v. Exxon Mobil Corporation*, 393 F.Supp.2d 20, 28 (D.D.C. 2005) (Oberdorfer, J.); *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 169 (5th Cir. 1999).[4] The War Crimes Act is a criminal statute and cannot be enforced by a private citizen in a civil action. 18 U.S.C. § 2441 *et seq.*; *Ivey v. National Treasury Employees Union*, 2007 WL 915229, at *5 (D.D.C. 2007) (Sullivan, J.). Accordingly, Plaintiff cannot rely on the Alien Tort Claims Act, the Torture Victims Protection Act or the War Crimes Act to state a claim for damages against L-3 based on alleged violations of the Geneva Convention.

## II. Plaintiff's Opposition Fails To Demonstrate That He Has Alleged Valid Claims For "Slavery" And "Right To Travel."

Plaintiff's opposition, like the complaint itself, fails to identify any valid legal basis for his Slavery and Right to Travel claims (Counts VIII and X respectively). Plaintiff's opposition merely regurgitates his ridiculous allegations of abduction and forced military service. This is not enough. Plaintiff must establish that those facts, if credited by the Court, are sufficient to state a cognizable claim for relief. *Marshall v. National Association of Letter Carriers BR36*, 2003 WL 22519869, *5 (S.D.N.Y. 2003) (*citing Ware v. City University of New York*, 2002 WL 1343752, at *1 (S.D.N.Y. 2002)). Neither Plaintiff's complaint nor his opposition provides any coherent explanation of the legal basis for his Slavery and Right to Travel claims - whether it be under any statutory,

---

[4] Because Plaintiff cannot state a claim under the Alien Tort Claims Act or the Torture Victims Protection Act, the *Bao Ge v. Li Pang*, *Doe v. Unical*, and *Iwonowa v. Ford* cases discussed in Plaintiff's Opposition, all of which involved suits brought under the Alien Tort Claims Act and the Torture Victims Protection Act, are inapposite.

regulatory or common law theory. For this reason alone, Plaintiff's Slavery and Right to Travel Claims should be dismissed.

      A.    **<u>There Is No Legal Basis For Plaintiff's Slavery Claim.</u>**

Plaintiff contends in his opposition that he has brought his Slavery claim under the 13th Amendment and the Trafficking Victims Protection Act. *See* Opp., pp. 28-29. Neither of these legal authorities provides Plaintiff with a private right of action. This Court has made clear that the 13th Amendment does not provide a private right of action for its enforcement. *Holland v. Bd. of Trustees of Univ. of the Dist. of Columbia*, 794 F.Supp. 420, 424 (D.D.C. 1992) (Rivercomb, J.). *See also Turner v. Unification Church*, 473 F.Supp. 367, 374 (D.R.I. 1978) (holding that no implied right of action for violations of the 13th Amendment exists under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*). Nor does the Trafficking Victims Protection Act contain any provision allowing a private civil litigant such as Plaintiff to state a claim for slavery. *See* 22 U.S.C. § 7102 *et seq.* To the contrary, that statute plainly states that it may only be enforced by the President. *Id.* at § 7108(a).[5]

---

[5] Nor would 42 U.S.C. sections 1981, 1983 or 1985 provide a basis for Plaintiff's slavery claim. Neither section 1981 nor section 1985 applies extraterritorially. Section 1981 only applies within the United States. *See* L-3's moving brief, p. 12 (*citing Ofori-Tenkorang v. American Intern. Group., Inc.*, 460 F.3d 296, 303-04 (2d Cir. 2006)). And section 1985's application is also limited to "any state or territory" of the United States. 42 U.S.C. § 1985. Finally, section 1983 requires some state action - which does not exist and is not alleged here. *Willis v. University Health Servs.*, 993 F.2d 837 (11th Cir. 1993), *cert. denied*, 510 U.S. 976, 114 S.Ct. 468, 126 L.Ed.2d 420 (1993) (affirming dismissal of claim against a private hospital based on plaintiff's inability to show hospital was a state actor with respect to challenged conduct).

**B.    There Is No Factual Basis For Plaintiff's Right To Travel Claim.**

Plaintiff has not alleged - either in the complaint or his opposition - any facts that would establish that L-3 took any action that infringed on any right Plaintiff had to travel. In fact, apart from its appearance in the title of Count X, the complaint makes no mention whatsoever of Plaintiff's alleged "right to travel." Accordingly, Plaintiff has failed to establish any factual or legal basis for his Right to Travel claim and it should be dismissed.

**III.   Plaintiff's Opposition Fails To Demonstrate That He Has Alleged A Valid Claim For Breach Of Contract.**

Faced with the fact that the offer letter he signed at the outset of his employment with L-3 defeats his breach of contract claim, Plaintiff now contends that this claim is based on some unspecified oral[6] agreement that preceded his signing of the offer letter.[7] This new theory, appearing nowhere in the complaint, cannot save Plaintiff's breach of contract claim.

Neither Plaintiff's complaint nor his opposition provide sufficient facts supporting this alleged oral contract. Nowhere does Plaintiff identify when the alleged oral contract was entered (except that it was before the offer letter), who allegedly extended the oral offer to him, or when or how he allegedly accepted the offer. Indeed, Plaintiff does not

---

[6] Plaintiff refers to a "verbal" contract. "Verbal" means "relating to words" and thus can refer to both the written and spoken word. L-3 assumes Plaintiff intends to mean "oral," which refers only to the spoken word.

[7] Notably, Plaintiff offers no explanation of why he signed the offer letter if it contained terms in conflict with some prior oral contract.

6

even identify the material terms of the alleged oral contract - most importantly, failing to present facts showing that this alleged oral contract was not one of at-will employment.

While Plaintiff contends in his opposition that his employment relationship was not at-will (*see* Opp., p. 16), this assertion lacks support in the law or in any of the facts alleged in the complaint or the opposition. Under any arguably applicable law (*i.e.,* Virginia, D.C. or California), an employment contract that is indefinite as to its term is presumed to be at-will. *Cave Hill Corp. v. Hiers* 264 Va. 640, 645, 570 S.E.2d 790, 793 (2002); *Reaves-Bey v. Karr*, 840 A.2d 701, 704 (D.C. 2004); Cal.Labor Code § 2922.[8] Nowhere in the complaint or the opposition does Plaintiff state that his alleged oral contract was one for a definite term. Thus, even accepting as true Plaintiff's new assertion of an oral contract, the employment relationship nevertheless was terminable at-will. As such, L-3 was free to make any alterations to the terms and conditions of Plaintiff's employment that it chose to without breaching any alleged oral contract with Plaintiff.[9] *See, e.g., White v. Federal Express Corp.*, 729 F.Supp. 1536, 1547-48 (E.D. Va. 1990); *Lewis v. NVT Technologies, Inc.*, 118 F.Supp.2d 51, 54 (D. D.C. 2001).

---

[8] Plaintiff appears to contend that either California law or Kuwaiti law may apply to his employment contract. As demonstrated above, California law is the same as Virginia law with respect to the presumption of at-will employment. And Plaintiff fails to identify the scope and substance of Kuwaiti law on this issue. Accordingly, the Court may presume that Kuwaiti law on this issue is the same as California and Virginia's. *In re Parmalat*, 375 F.Supp.2d 278 (S.D.N.Y. 2005) (in the absence of proof of foreign law, the court may presume that the foreign law is the same as local law).

[9] Plaintiff attempts to avoid this result by asserting in his opposition several reasons he was not able to quit (including that he would have died in the desert or been shot as a deserter). *See* Opp., pp. 16-17. These incredible allegations, even if given credence, do

7

Plaintiff also attempts to salvage his contract claim by contending that he earned certain "fringe benefits" alleged in the complaint at the moment he entered into his alleged oral contract with L-3, and that L-3 therefore could not make changes to the terms and conditions of his employment. *See* Opp., p. 15. Plaintiff cites *White v. Federal Express Corp., White*, 729 F.Supp. 1536 (E.D.Va. 1990), in purported support of this novel proposition. But *White v. Federal Express* (which itself did not hold that an employer may not cancel benefits already earned by an employee) merely cited the Virginia Supreme Court's decision in *Hercules Powder Company v. Brookfield,* 189 Va. 531, 53 S.E.2d 804 (1949), for the well-settled yet irrelevant proposition that an employer may not cancel any *compensation* benefits already earned by an employee. *White*, 729 F.Supp. at 1548.

*Hercules Powder Company* involved a former employee's claim for severance pay. In holding that the employee had earned the right to severance pay by accepting and continuing his employment, the court noted that the severance pay was simply another form of compensation that the employer had offered to the employee for his continued service and that the employee had accepted that offer of compensation before the termination of his employment. 189 Va. at 541-42, 53 S.E.2d at 808-09. In other words, that case did not address the question of whether an employer may alter the terms and conditions of an at-will employee's employment, but merely addressed whether an

---

not establish that his employment relationship with L-3 was for a definite term. Instead, they are a reiteration of Plaintiff's deficient slavery claim.

employer may deprive an employee of a form of compensation that the employee had already earned.

Unlike severance pay, the location where Plaintiff was required to perform his work for L-3, the living quarters and other amenities were not a form of compensation; they were terms and conditions of his employment that L-3 was free to change (just as Plaintiff was free to refuse to continue to work for L-3 under the changed terms and conditions).[10] Accordingly, to the extent that Count XVI alleges a claim for breach of oral contract with respect to Plaintiff's alleged service in Iraq, that claim must be dismissed.

### IV. Plaintiff Has Not Demonstrated That He Has Pled His Fraud Claim With The Requisite Degree Of Particularity.

By asserting that he has alleged a valid fraud claim under Rule 8 of the Federal Rules of Civil Procedure, Plaintiff completely ignores the basis of L-3's motion to dismiss this claim. The pleading standards applicable to fraud claims are set forth in Rule 9(b), not Rule 8. Rule 9(b) requires that a plaintiff state with particularity the circumstances on which a fraud claim is based. FRCP 9(b). Plaintiff must plead *with particularity* matters such as the time, place, and content of the false representations, the misrepresented facts, the identity of the individuals who made the misrepresentations,

---

[10] With respect to Plaintiff's claim that he was promised certain living quarters and other amenities, the complaint and opposition are devoid of any factual allegations as to when those alleged fringe benefits were earned. As such, the Complaint itself fails to allege sufficient facts to establish that Plaintiff earned those alleged fringe benefits prior to their alleged cancellation by L-3. Plaintiff, therefore, fails to state a claim for breach of contract under *Hercules Powder Company* with respect to the living quarters and other amenities that he claims he was promised.

9

and what the L-3 retained or Plaintiff lost as a consequence of the alleged fraud. *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551-52 (D.C. Cir. 2002); *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir. 1981); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990), *cert. den'd*, 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990). Plaintiff's complaint utterly fails to plead any of these facts with the requisite degree of particularity, and the complete lack of any such facts in his opposition demonstrates plaintiff's inability to do so. Plaintiff's non-conforming fraud claim must be dismissed.

**V.     Plaintiff Has Failed To Establish A Valid Claim Under The Rehabilitation Act.**

In his opposition Plaintiff concedes that he failed to exhaust his administrative remedies under the ADA and agrees to dismiss his disability discrimination claim to the extent it is based on the ADA. But he refuses to dismiss his disability discrimination claim to the extent it is based on the Rehabilitation Act, on the ground that section 504 of the Rehabilitation Act does not require any exhaustion of administrative remedies. Opp., pp. 11-12. L-3 concedes that the exhaustion requirements applicable to claims brought under the other sections of the Rehabilitation Act are not applicable to claims brought under Section 504. However, Plaintiff's complaint does not identify the specific section of the Rehabilitation Act on which this claim is based. In any event, Plaintiff cannot state a claim under section 504 of the Rehabilitation Act because the applicable statute of limitations has expired.

The Rehabilitation Act does not contain a specific limitations period. *McCullough v. Branch Banking & Trust Co.*, *McCullough*, 35 F.3d 127, 129 (4th Cir. 1994). Therefore, courts must select the most appropriate state statute of limitations to apply. *Id.*, at 129 (*citing* 42 U.S.C. § 1988(a)). In so doing, courts must first select the state statute that is "most analogous" to the federal claim, and then consider whether the application of that limitations period is consistent with the federal statute and its underlying policies. *Id.* (*citing Wilson v. Garcia*, 471 U.S. 261, 266-67, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985)).

Where a state has enacted a statute that prohibits discrimination against disabled individuals, that statute, and not the general statute of limitations for tort claims, is the most analogous to the Rehabilitation Act. *Id.,* at 130. The District of Columbia has enacted its own statute prohibiting discrimination against individuals with disabilities: The D.C. Human Rights Act, DC-ST § 2-1401.01 *et seq.* That statute provides for a one year limitations period for disability discrimination claims. DC-ST § 2-1403.16. Plaintiff's Rehabilitation Act claim is subject to a one year statute of limitations.[11]

---

[11] Although one decision of this Court held that D.C.'s three-year personal injury statute of limitations applies to Rehabilitation Act claims (*Doe v. Southeastern University*, 732 F.Supp. 7, 9 (D.D.C. 1990) (Harris, J.)), L-3 respectfully submits that this decision was in error. That decision incorrectly failed even to consider whether the D.C. Human Rights Act supplied the most analogous state statute of limitations, and instead simply followed other circuits in finding that the general statutes of limitations for personal injury applicable to claims under 42 U.S.C. sections 1981 and 1983 should be applied to claims under the Rehabilitation Act. *Id.* But, unlike sections 1981 and 1983, which encompass a broad range of conduct that could result in personal injury, section 504 of the Rehabilitation Act focuses exclusively on discrimination against disabled persons. Undeniably, such claims are more analogous to disability discrimination claims under the D.C. Human Rights Act than they are to general tort claims. Furthermore, as the Fourth


It is clear from the face of Plaintiff's complaint that the one-year limitations period for Plaintiff's Rehabilitation Act claim had long since expired at the time Plaintiff filed suit. According to Plaintiff's complaint, L-3 terminated his employment on June 18, 2003. Compl., ¶¶ 55-56. Thus, based on Plaintiff's own pleading, the last date on which L-3 could have taken any adverse action against Plaintiff with respect to either his alleged accommodation requests or his termination was June 18, 2003. However, Plaintiff did not file his complaint until April of 2006 - almost two years after the statute of limitations on his claim expired. Plaintiff's time-barred Rehabilitation Act claim must be dismissed.

### VI.     Plaintiff Has Not Demonstrated That His Wage And Hour Claim States A Valid Claim Under U.S. Or Foreign Law.

Plaintiff concedes in his opposition that he cannot state a wage and hour claim under the Fair Labor Standards Act, the Service Contract Act or any other U.S. law. Opp., p. 25. Instead, he contends that he has stated a claim under Iraqi law. Yet, as with his other foreign law claims, Plaintiff cites no specific law that would allow either the Court or L-3 to determine whether the alleged law is applicable to Plaintiff's claim or even exists. In so doing, Plaintiff deprives L-3 of adequate notice of the claim asserted against it and of the ability to defend itself, and divests this Court of the information it requires to properly adjudicate the case. For this reason, Plaintiff's so-called Iraqi wage

---

Circuit noted in *Wolsky v. Medical College of Hampton Roads*, in many of the cases applying a state's general statute of limitations for personal injury actions to the Rehabilitation Act, the states in question did not have statutes forbidding discrimination against disabled persons. *Wolsky*, 1 F.3d 222, 224 (4th Cir. 1993). Because D.C. has enacted a statute that is analogous to the Rehabilitation Act, that statute's limitations period, and not the general limitations period applicable to personal injury actions, should be applied to Plaintiff's Rehabilitation Act claim.

and hour claim must be dismissed. *Wilkins v. Thomas*, 104 Fed.Appx. 140, 140-141, 2004 WL 1157768, at *1 (10th Cir. 2004); *Southfork of Eel River Environmental League v. U.S. Army Corps of Engineers*, 1997 WL 351087, at *9 n.14 (N.D.Cal. 1997) (a plaintiff's failure to specify the legal basis for a claim in the complaint is fatal where the Court is unable to identify any basis for the claim).

### VII. Plaintiff Has Not Established That This Court Is A Convenient Forum For His Foreign Law Claims.

Plaintiff's opposition misses the main point of L-3's *forum non conveniens* argument - namely, that Plaintiff's chosen forum is so completely inappropriate for pursuing his supposed foreign law claims that those claims must be dismissed. As L-3 notes in its moving brief, the D.C. Circuit has made clear that where neither party resides in the District of Columbia and the plaintiff's claim has arisen in another jurisdiction that has more substantial contacts with the cause of action, the plaintiff bears the burden of showing why his chosen forum is appropriate for litigating his claims. *Nee v. Dillon*, 239 F.2d 953, 955 (D.C. Cir. 1956). Plaintiff has not carried this burden. Merely reciting a litany of excuses as to why it would be unfair for him to have to litigate his case in Iraq,[12] Plaintiff's opposition fails to rebut L-3's argument that *all four* of the public interest factors set forth in the Supreme Court's decision in *Gulf Oil Corporation v. Gilbert* weigh in favor of the dismissal of Plaintiff's foreign law claims.

---

[12] Although he also purports to allege claims under German and Kuwaiti law, he provides no indication as to how or why it would be unfair to require him to litigate those claims in those countries.

In *Gulf Oil Corporation*, the Supreme Court held that in considering whether a claim should be dismissed on the grounds of *forum non conveniens,* courts should consider the following "public interest" factors: (1) administrative difficulties caused by local court dockets congested with foreign litigation; (2) the local interest in having localized controversies decided at home; (3) the unfairness of imposing the burden of jury duty on the citizens of a forum having no relation to the litigation; and (4) the avoidance of unnecessary problems in conflict of laws and in the interpretation of the laws of another jurisdiction. 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). With respect to this last factor, the need to apply the law of a foreign nation strongly favors dismissal. *Membreno v. Costa Crociere S.p.A.*, 425 F.3d 932, 938 (11th Cir. 2005); *Calavo Growers of California v. Belgium*, 632 F.2d 963, 967 (2d Cir. 1980), *cert. denied*, 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981).

Plaintiff does not dispute that his foreign law claims have no relationship to the District of Columbia. Neither Plaintiff nor L-3 is a resident of the District; nor is there any allegation in the complaint that any of the alleged acts by L-3 on which Plaintiff bases his foreign law claims occurred in the District. Plaintiff's foreign law claims involve alleged foreign controversies between non-residents of this forum that are dependent on the application of foreign law. Trying those claims in this Court would unduly burden the Court's docket with foreign litigation and impose the burden of jury duty on citizens of a forum that has no relationship to those claims. Furthermore, trying Plaintiff's foreign law claims in this Court would invariably result in a number of problems with respect to the interpretation of foreign laws. These problems are readily

14

apparent on the face of Plaintiff's complaint and his opposition, neither of which even identifies the foreign statutes or common law authorities on which Plaintiff's claims are based.

Plaintiff's sole argument with respect to the public interest in litigating his claims in this Court is that he is a U.S. citizen and the U.S. has an interest in ensuring that entities who contract to provide services to the federal government fully pay those of their workers who are U.S. citizens. Not only is this point irrelevant to the factors identified by the Supreme Court in *Gulf Oil Corporation*, it fails to demonstrate how trying Plaintiff's foreign law claims in this Court would serve the public interests of this forum - the District of Columbia. In any event, Plaintiff is incorrect in asserting that the public policies of the U.S. are in any way implicated by his foreign law claims. While the U.S. certainly has an interest in the enforcement of its own laws, it has no interest in the enforcement of the laws of a foreign country - especially where, as here, the foreign laws in question impose requirements that are not imposed by, and very likely conflict with, the laws of the U.S. Simply put, Plaintiff has not presented any cogent argument that litigating his foreign law claims in this Court would not be contrary to the public interest.

For these reasons, Plaintiff has failed to demonstrate that this Court is an appropriate forum for litigating his foreign law claims.

## VIII. Plaintiff Fails To Sufficiently Inform The Court Or L-3 Of The Legal Basis For His Foreign Law Claims.

Plaintiff's foreign law claims also must be dismissed because they fail to sufficiently inform the Court or L-3 of their legal basis. As set forth in Section VI above, it is evident from both Plaintiff's complaint and his opposition that Plaintiff has simply recited random factual allegations and confusing and incorrect legal statements in an effort to create claims under some unspecified foreign law where no claim exists under the laws of the U.S. These vague and incomprehensible claims deprive L-3 of sufficient notice of the claims being asserted against it and fail to allow this Court to evaluate the legal grounds for the claims, as required by Rule 8 of the Federal Rules of Civil Procedure.[13]  *Wilkins*, 104 Fed.Appx. 140, 140-141, 2004 WL 1157768, at *1 (10th Cir. 2004); *Southfork of Eel River Environmental League*, 1997 WL 351087, at *9 n.14 (N.D.Cal. 1997). As in *Marshall v. National Association of Letter Carriers BR36*, Plaintiff's foreign law claims simply "involve his writing down legal terms, without

---

[13] That Plaintiff's foreign law claims lack any legal foundation is nowhere more evident than in his wage and hour claim and his Iraqi Labor and Social Affairs notification claim. The Iraqi Labor Code, Act No. 71 of 1987 (July 27, 1987) (a copy of which is attached hereto as Exhibit 2) does not provide for a private right of action for the enforcement of its wage and hour provisions. *See* Exhibit 2, Part V, Chapter I, §§ 54-66. It merely provides that the Iraqi government may impose fines on persons who contravene the Code's provisions regarding wages or hours of work. *See* Exhibit 2, Part V, Chapter I, §§ 79. Nor does the Code contain any provision requiring a U.S. company to notify either the Iraqi Ministry of Labor and Social Affairs or the President of the General Federation of Employees' Trade Unions *any time* it terminates the employment of a U.S. citizen. *See* Exhibit 2. Furthermore, the notification claim, which purports to be a class action, fails under Rule 23.1(b) of this Court's Local Rules of Civil Procedure because Plaintiff did not move to have his purported class certified (or to extend the time to do so) within 90 days after filing the complaint. *See, e.g., Howard v. Gutierrez*, 474 F.Supp.2d 41, 53 (D.D.C. 2007) (Bates, J.) (dismissing a class action claim where the plaintiff failed to adhere to the requirements of Local Rule 23.1(b)).

supporting facts, that make no sense." 2003 WL 22519869, *5 (S.D.N.Y. 2003).  Such clearly frivolous claims should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons as well as those set forth in its moving brief, L-3 respectfully requests that the Court dismiss Plaintiff's complaint without leave to amend.

Respectfully submitted,

/s/
Matthew H. Sorensen, D.C. Bar 492130
John F. Scalia (motion for admission *pro hac vice* forthcoming)
GREENBERG TRAURIG, LLP
1750 Tysons Blvd., Suite 1200
McLean, VA 22102
Tel:  (703) 749-1300
Fax:  (703) 749-1301
*Counsel for Defendant*
*L-3 Communications Titan Corporation*