**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ABDULWAHAB NATTAH, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 06-cv-700 (RCL) |
| | ) | |
| GEORGE W. BUSH, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MEMORANDUM OPINION**

## I.   INTRODUCTION

This action arises from alleged breaches of contract and violations of both the United States Constitution and international law by a private U.S. corporation and several federal officials.  Plaintiff Abdulwahab Nattah alleges that L-3 Services, Inc.[1] ("L-3 Services") breached a contract for employment as an interpreter in Kuwait and subsequently sold him as a slave to the United States Army.  Mr. Nattah further alleges that various United States entities unlawfully detained him and forced him to work as an interpreter and soldier in Iraq without compensation before dishonorably discharging him, and that the government has subsequently refused to recognize him as a veteran and grant him veterans benefits and back-pay.  Almost four years ago, Mr. Nattah filed a Complaint asserting claims for violations of the Constitution and international law, breach of contract, and failure to provide benefits as required under U.S. law against L-3 Services and several government entities—including then-President George W. Bush, then-Vice President Dick Cheney, former Secretary of Defense Donald Rumsfeld, and Six Unknown

---

[1] Defendant L-3 Services, Inc. is the successor in interest to L-3 Communications Titan Corporation, which was initially sued under the name L-3 Communications Titan Group.

United States Government Employees (collectively, the "federal defendants").  This Court subsequently dismissed all of plaintiff's claims and denied his motion to amend the Complaint to include claims against Francis J. Harvey, the former Secretary of the Army.  On appeal, the D. C. Circuit reversed and remanded limited portions of this Court's dismissal, holding that (1) plaintiff should be permitted to amend the Complaint and pursue a limited number of claims against the Secretary of the Army and (2) this Court had improperly dismissed the breach of contract claim against L-3 Services.  Now on remand, both federal defendants and defendant L-3 Services have again moved to dismiss plaintiff's action.  For the reasons set forth below, the Court will GRANT both motions.

## II.   BACKGROUND

### A.    Factual History

The alleged history from which this action arises is set forth more fully in this Court's original opinion dismissing the case, *Nattah v. Bush*, 541 F. Supp. 2d 223, 226–28 (D.D.C. 2008) ("*Nattah I*"), and will only be briefly restated here.  Mr. Nattah, a dual citizen of the United States and Libya, First Amended Complaint ¶ 13, Mar. 31, 2008 [68] ("FAC"), alleges that he traveled to Virginia to interview for a position as a translator with L-3 Services sometime in early 2003. *Id*. at ¶¶ 19, 92.  While at his interview and orientation, plaintiff was offered a job as a translator in Kuwait. *Id*. at ¶¶ 22, 94.  Mr. Nattah alleges that he reached an oral agreement with agents of L-3 Services in which he would work only in Kuwait, receive three meals a day, be given an air-conditioned apartment to live in, be kept out of war zones, and could only be fired for misconduct or a lack of work resulting from L-3 Services' potential inability to operate as a contractor on behalf of the United States in the region. *Id*. at ¶¶ 22, 94–95, 281–82; *see also Nattah v. Bush*, 605 F.3d 1052, 1057 (D.C. Cir. 2010) (noting that complaint sets forth "[an]

alleged oral contract") ("*Nattah II*").[2]  Plaintiff alleges that he accepted the agreement with L-3 Services only after careful consideration of these conditions.  FAC ¶¶ 96, 98.

After reaching an agreement with L-3 Services, plaintiff traveled to Kuwait, where he spent two weeks visiting various remote operating locations before being permanently set up at a site called "Camp Virginia," where he had "no running water, no general plumbing, and did not receive three meals per day."  *Id.* at ¶ 24; *see also id.* at ¶ 99 (stating that encampment "did not include phone, mail, air-conditioning, running water, or electricity").  Plaintiff alleges that after approximately two months in Kuwait working for L-3 Services, he was taken to Iraq by the "United States Military" with L-3 Services' "knowledge and approval," *id.* at ¶¶ 25, 103; *see also id.* at ¶ 101 (alleging L-3 Services "sold plaintiff as a slave to the military"), and in violation of the company's prior assurance that Mr. Nattah would only work in Kuwait.  *Id.* at ¶ 93. Plaintiff alleges that these actions were the result of a intentional plot on behalf of L-3 Services to provide the United States with interpreters in the region during the run-up to the war in Iraq. *See id.* at ¶¶ 91, 94.  For the next several months, according to plaintiff, "the United States Military forced [him] to travel with them and translate various Arabic documents, teach soldiers Arabic language, and communicate with local intelligence."  *Id.* at ¶ 29.  Plaintiff also alleges that the military frequently put him in danger, *id.* at ¶¶ 32, 103, and that on one trip through an

---

[2] There is significant confusion in the FAC concerning the contract between L-3 Services and Mr. Nattah. Even drawing all reasonable inferences in plaintiff's favor—as the Court must, *Nattah I*, 541 F. Supp. 2d at 233— the FAC contains several allegations that directly conflict with one another.  For example, plaintiff alleges that he contacted L-3 Services "after learning of a translator employment opportunity," and L-3 Services sent him a ticket to travel to Virginia for an interview, FAC ¶ 19, but also alleges that the initial offer occurred at a career fair.  *Id.* at ¶¶ 281, 284.  Moreover, despite the D.C. Circuit's conclusion that the agreement between Mr. Nattah and L-3 Services was unwritten, plaintiff never specifies whether the contract was made orally or in some other writing.  *See id.* at ¶¶ 22, 95.  Indeed, in at least one allegation, Mr. Nattah states that he did "sign[] an employment contract with [L-3 Services]," *id.* at ¶ 97, though in two other places Mr. Nattah alleges that the document he signed "did not serve as the employment contract."  *Id.* at ¶ 283; *see also id.* at ¶ 23 ("The document states that it is not to be construed as a contract.").  The Court thus remains unconvinced that plaintiff sufficiently alleges the existence of an oral employment agreement with the terms alleged above.  However, in light of the Court of Appeals' conclusion to the contrary, *see Nattah II*, 605 F.3d at 1057–58 ("[W]e conclude Nattah's amended complaint sufficiently describes his claim."), the Court here will assume—for purposes of resolving this motion—that Mr. Nattah and agents of defendant L-3 Services did in fact orally reach an employment agreement incorporating the terms set forth above.

"active war zone" he suffered severe nerve damage and significant hearing loss when a mortar shell exploded near the vehicle in which he was traveling. *Id.* at ¶¶ 27, 112. A base physician who examined Mr. Nattah subsequently sent him to Germany for medical care. *Id.* at ¶¶ 34–35, 113. Shortly thereafter, Mr. Nattah was discharged from the military, *id.* at ¶¶ 114, 117, and since his discharge, plaintiff alleges that the government has consistently refused to provide veterans benefits or recognize his service, despite having classified plaintiff "as an E-4 (Corporal) in the United States Army." *Id.* at ¶¶ 110, 115, 146, 148, 150.

**B.    Procedural History**

Relying on these allegations, plaintiff filed his claims in Spring of 2006. Complaint, Apr. 19, 2006 [1]. Plaintiff's original Complaint set forth twenty separate claims for relief, centered principally upon (1) the allegations that defendant L-3 Services violated the employment contract by failing to provide Mr. Nattah the benefits he was promised and then selling him into slavery to the United States Army, and (2) his allegations that federal defendants violated his legal and constitutional rights by detaining him, forcing him into dangerous war zones, prohibiting him from leaving the area, and—after his return to the United States—refusing to recognize his service and award him veterans benefits and back-pay. *See generally id.*

In late 2006, federal defendants moved to dismiss plaintiff's claims on the ground that they are immune from suit under the doctrine of sovereign immunity. Federal Defendants' Motion to Dismiss 5–14, Oct. 30, 2006 [22]. After plaintiff failed to respond despite an extension of time, the Court dismissed all claims against federal defendants. Order Granting Motion to Dismiss by Federal Defendants, Jan. 30, 2007 [32]. A few months later, defendant L-3 Services also moved to dismiss the suit on several grounds. Defendant L-3 Communications Titan Corporation's Motion to Dismiss, Mar. 12, 2007 [38]. After that motion was fully briefed,

plaintiff sought leave to amend the Complaint to add new allegations against L-3 Services and federal defendants, and to assert claims against several new defendants, including the Secretary of the Army.  Motion for Leave to File 1st Amended Complaint 4–9, Nov. 28, 2007 [47].  In that same motion, plaintiff asked the Court to reconsider its earlier dismissal of the claims against federal defendants.  *Id*. at 10–14.

By Memorandum Opinion in early 2008, the Court granted and denied in part plaintiff's motion for leave to file an amended complaint, denied plaintiff's motion for reconsideration, and granted L-3 Services' motion to dismiss in its entirety.  *Nattah I*, 541 F. Supp. 2d at 226.  First, the Court found that plaintiff failed to identify any developments or new evidence warranting reconsideration of its original dismissal of federal defendants.  *Id*. at 232.  Second, the *Nattah I* Court granted plaintiff's motion for leave to amend the Complaint as to allegations concerning L-3 Services, *id*. at 228, denied plaintiff's motion as to the Secretary of Defense because that defendant had been previously dismissed, *id*. at 228–30, denied plaintiff's motions concerning the proposed Iraqi defendants because those allegations failed to state a claim upon which relief might be granted, *id*. at 231, and denied plaintiff's motion to add claims against the Secretary of the Army because "[t]he amended complaint makes no specific allegations against Secretary Harvey that are distinguishable from those asserted against the other federal defendants. . . . [and thus] would not survive a motion to dismiss."  *Id*. at 231–32.  Finally, the Court granted defendant L-3 Services' motion to dismiss as to all claims.  With respect to the claim for breach of contract, the Court relied on an offer letter signed by plaintiff stating that the employment relationship between L-3 Services and Mr. Nattah was an at-will agreement.  *Id*. at 236.[3]  The Court then entered final judgment in favor of all defendants.  Order, Mar. 31, 2008 [67].

---

[3] With regard to the other claims against L-3 Services set forth in the FAC, the Court (1) dismissed the alleged violations of international law because a private plaintiff cannot enforce international agreements, *Nattah I*,

Plaintiff appealed the dismissal, and last year the D.C. Circuit Court of Appeals, while affirming the majority of this Court's *Nattah I* opinion, reversed two of this Court's holdings. *Nattah II*, 605 F.3d at 1054.  First, the Court explained that "section 702 of the Administrative Procedure Act . . . waiv[es] sovereign immunity for claims seeking relief other than money damages and stating a claim" against an agency or agency official.  *Id*. at 1056 (quotations omitted).  Thus, because the FAC contains claims for various forms of non-monetary relief, the D.C. Circuit held that this Court erred in stopping plaintiff from amending his complaint to set forth non-monetary claims against the Secretary of the Army, as they would not be barred by sovereign immunity.  *Id*. at 1056–57.  Second, with respect to plaintiff's breach of contract claim against L-3 Services, the Court of Appeals observed that "the fact Nattah signed an offer letter from L-3 is not necessarily inconsistent with the existence of an oral contract," *id*. at 1057, and held that "[m]odification of an at-will employment contract does not extinguish either the employee's original contract or his right to sue for its breach."  *Id*. at 1058.  On the basis of these determinations, the D.C. Circuit concluded—notwithstanding the contradictory allegations concerning contract formation and execution in the FAC—that "Nattah's complaint states a claim against L-3 Services for breach of its oral contract with Nattah."  *Id*.  The Court of Appeals then remanded the case with instructions to proceed with "Nattah's non-monetary claims against the Secretary of the Army and his breach of contract claim against L-3" Services.  *Id*. at 1059.

On remand, defendant L-3 Services and federal defendants—on behalf of the Secretary of the Army—moved to dismiss the FAC.  *See, e.g.*, Defendant L-3 Services, Inc.'s Motion to

---

541 F. Supp. 2d at 233, (2) dismissed the slavery claim because the Thirteenth Amendment does not provide a private right of action, *id*. at 234, (3) dismissed the claims for violation of plaintiff's constitutional right to travel, fraud, and wrongful termination for failure to state a claim pursuant to Rule 12(b)(6), *id*. at 235–37, (4) dismissed the claims based on Iraqi law due to plaintiff's failure to identify any legal provisions that had been violated, *id*. at 237, (5) dismissed the due process claim for lack of state action, *id*. at 237–38, and (6) dismissed the claim related to L-3 Services' alleged breach of its contract with the United States because plaintiff was not intended as a beneficiary of that alleged agreement.  *Id*. at 238.  Each of these holdings remained undisturbed by the D.C. Circuit on appeal.

Dismiss or in the Alternative for Summary Judgment, Sep. 17, 2010 [75] ("L-3 Mtn."); Federal

Defendants' Renewed Motion to Dismiss, Sep. 17, 2010 [76] ("Fed Mtn.").  A month later,

plaintiff filed his oppositions to both motions, *see, e.g.*, Opposition to L-3 Services, Inc.'s

Motion to Dismiss, Oct. 25, 2010 [80] ("P's L-3 Opp."); Reply to Federal Defendants' Motion,

Oct. 12, 2010 [77] ("P's Fed. Opp."); in addition, plaintiff filed a document styled as a motion

and titled "Collateral Estoppels, Waiver, Law of the Case."  Motion for Miscellaneous Relief,

Oct. 12, 2010 [78] ("P's Mtn.").  Defendants then submitted reply briefings in which they also

addressed the points raised by plaintiff's ancillary motion.  *See, e.g.*, Defendant L-3 Services,

Inc.'s Reply in Support of its Motion to Dismiss, Nov. 1, 2010 [83] ("L-3 Reply"); Federal

Defendants' Reply to Plaintiff's Opposition to Their Renewed Motion to Dismiss, Nov. 3, 2010

[85] ("Fed. Reply").  Having been fully briefed, the Court now turns to the merits of the dispute.

## III.    LEGAL STANDARD

### A.      Rule 12(b)(1)

Federal district courts are courts of limited jurisdiction, *Kokkonen v. Guardian Life Ins.

Co.*, 511 U.S. 375, 377 (1994), and a Rule 12(b)(1) motion for dismissal presents a threshold

challenge to a court's jurisdiction.  *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).  In

evaluating such a motion, the Court must "accept as true all of the factual allegations contained

in the complaint," *Wilson v. District of Columbia*, 269 F.R.D. 8, 11 (D.D.C. 2010) (citing

*Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993)),

and should review the complaint liberally while accepting all inferences favorable to the

plaintiff.  *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004).  At the same time, the Court

may consider relevant materials outside the pleadings, *Settles v. U.S. Parole Comm'n*, 429 F.3d

1098, 1107 (D.C. Cir. 2005), and must remain cognizant that "the plaintiff's factual allegations

in the complaint will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Wilson*, 269 F.R.D. at 11 (quotations omitted).  In defending against a Rule 12(b)(1) motion, the plaintiff bears the burden of demonstrating that jurisdiction exists.  *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).

> **B.**     **Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  To satisfy this test, a complaint must contain "a short and plaint statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Atherton v. District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009), and grant a plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  However, a court may not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  In other words, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*; *see also Atherton*, 567 F.3d at 681 (holding that complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

# IV.     ANALYSIS

> **A.**     **Mr. Nattah's Assertions of Collateral Estoppel, Waiver and Law of the Case**

The Court will first address Mr. Nattah's independent motion for miscellaneous relief, which asks the Court to declare—pursuant to the doctrines of collateral estoppel, waiver, law of

the case, and *res judicata*—that defendants may not "re-litigate" issues previously decided or waived.  P's Mtn. at 1.  While plaintiff is correct that this Court cannot revisit matters settled by the Court of Appeals in this case, none of the doctrines set forth as bases for plaintiff's motion are capable of barring any of the arguments advanced by defendants here.

        *Collateral Estoppel and Res Judicata*

        Collateral estoppel and *res judicata* are jurisprudential rules that promote fairness to the parties, sound judicial administration, and codify the principle that litigation must eventually come to an end by preventing re-litigation of settled issues or claims.  *See* 47 Am. Jur. 2d *Judgments* § 488 (noting purposes of collateral estoppel are "finality," "preserving the integrity of the judicial system," "promoting judicial economy," and avoiding "harassment"); Restatement (Second) of Judgments § 19 cmt a. (including "fairness to the [parties]," "sound judicial administration" and need to "require at some point litigation over the particular controversy come to an end" among purposes of *res judicata*).  One necessary element of both doctrines is the existence of a prior valid and final judgment resolving a particular issue or claim.  *See Consol. Edison Co. v. Bodman*, 449 F.3d 1254, 1258 (D.C. Cir. 2006) ("The law of collateral estoppel . . . is intended to protect the parties from the burden of relitigating the same issue following a *final judgment*") (emphasis added; quotations omitted); *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) ("[U]nder *res judicata*, a *final judgment* on the merits of an action precludes the parties or their privies from relitigating.") (emphasis added; quotations omitted).  Here, however, no final judgment has been entered, and thus plaintiff's requested application of these doctrines must be rejected.  *See In re Capitol Hill Grp.*, No. 02-00359, 2010 Bankr. LEXIS 3031, at *24 (Bankr. D.D.C. Sep. 14, 2010) ("Because no final judgment had been entered . . . neither res judicata nor collateral estoppel would have barred such a defense.").

*Waiver*

Plaintiff asserts that both federal defendants and defendant L-3 Services forfeited the substantive bases upon which they move to dismiss the FAC because they failed to raise their objections in the original motions to dismiss.  P's Mtn. at 1–2.  Rule 12 of the Federal Rules of Civil Procedure provides that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  Fed. R. Civ. P. 12(g)(2).  This general principle is limited in several important respects, however.  First, the text of the waiver rule is clear that waived defenses only include those "that were available when the first Rule 12(b) motion was filed."  *Candido v. District of Columbia*, 242 F.R.D. 151, 161 (D.D.C. 2007).  Second, Rule 12(g) is explicitly limited by Rule 12(h), which exempts from the waiver rule both motions to dismiss pursuant to Rule 12(b)(1), *see Simpkins v. D.C. Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997) ("[A] party cannot waive the absence of subject matter jurisdiction."), and motions to dismiss for failure to state a claim brought pursuant to Rule 12(b)(6).  *Lindsey v. United States*, 448 F. Supp. 2d 37, 55 (D.D.C. 2006) ("[A] defense of failure to state a sustainable claim is not waived simply by the defendant's failure to include it in an initial 12(b) motion submitted to the Court.").  As set forth below, at least one of these exceptions applies to each ground for dismissal articulated by defendants in their respective motions.

*Law of the Case*

Plaintiff also relies upon the doctrine of "law of the case," which is a prudential rule under which courts refuse to reopen issues that have been previously decided in the same case.  *Crocker v. Piedmont Aviation*, 49 F.3d 735, 739 (D.C. Cir. 1995).  The D.C. Circuit expresses this rule in the following terms:  "[T]he same issue presented a second time in the same case in

the same court should lead to the same result." *United States v. Thomas*, 572 F.3d 945, 949 (D.C. Cir. 2009).  Under the law of the case doctrine, this Court may not revisit any issues that it has previously resolved, nor may it re-evaluate the merits of any disputes settled by the D.C. Circuit on appeal.  Here, however, the issues raised by defendants' motions are not foreclosed by earlier decisions in this litigation, and thus fall outside the law of the case doctrine.  *Murchison v. Inter-City Mortg. Corp. Profit Sharing & Pension Plans*, 503 F. Supp. 2d 184, 191 (D.D.C. 2007) ("The law of the case doctrine does not apply because [the issue] was not previously decided.").  In particular, the Secretary of the Army was not a defendant at the time of federal defendants' initial motion to dismiss, and thus his asserted grounds for dismissal are new to this litigation.  Moreover, the D.C. Circuit explicitly reserved decision on new issues when it held that plaintiff's claims against the Secretary "would survive a motion to dismiss—*at least on the grounds relied upon by the district court and the federal Appellees*."  *Nattah II*, 605 F.3d at 1057.  Thus, whether the military exception to the APA is applicable in this case, or whether plaintiff fails to state a claim for relief with respect to the four claims against the Secretary, have not been previously settled.  *See Nattah I*, 541 F. Supp. 2d at 231 (holding only that plaintiff's claims fail because "the Government is immune from suit and has not explicitly waived immunity").  With respect to defendant L-3 Services' motion, two of the grounds for dismissal—expiration of the statute of limitations and prohibition by the statute of frauds—have never been raised in this litigation, while the question of whether plaintiff has stated a breach of contract claim—an issue that may implicate the law of the case—need not be reached.

**B.** **The Secretary of the Army's Motion to Dismiss**

In its opinion on appeal, the D.C. Circuit identified four non-monetary claims against the Secretary of the Army in the FAC that would survive a motion "on the grounds relied upon" by

this Court in dismissing the claims against the other federal defendants. *Nattah II*, 605 F.3d at 1056. In particular, the Court of Appeals permitted plaintiff to allege claims for violations of (1) the Geneva Convention, (2) prohibitions against slavery, (3) the constitutional right to travel, and (4) international law. *Id.* Now on remand, federal defendants move, on the Secretary's behalf, to dismiss those remaining claims[4] on two distinct bases: first, they point out that while the Court of Appeals found that the Secretary had waived sovereign immunity under the APA, it failed to consider that Act's "military authority" exception, which exempts the Secretary's alleged acts in this case from any such waiver, Fed. Mtn. at 3–7; second, federal defendants argue that each of Mr. Nattah's claims are insufficient for the same reasons that led this Court to dismiss identical claims against defendant L-3 Services in *Nattah I. Id.* at 7–16.

### 1.    Sovereign Immunity

In determining that plaintiff should be permitted to amend his Complaint with respect to non-monetary claims against the Secretary, the D.C. Circuit relied on § 702 of the APA:

> A person suffering legal wrong because of agency action . . . is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages . . . shall not be dismissed nor relief therein denied on the ground that it is against the United States.

5 U.S.C. § 702. On remand, federal defendants concede that this section provides a general waiver of sovereign immunity, Fed. Mtn. at 3–4, but contend that the APA "explicitly excludes certain types of agency action from judicial review"—including "acts of 'military authority exercised in the field in time of war or in occupied territory.'" *Id.* at 4–5 (quoting 5 U.S.C. §

---

[4] At various points in the briefing, plaintiff appears to assume that claims against the Secretary or other federal defendants—other than the four claims against the Secretary specifically identified by the D.C. Circuit—remain pending. However, the *Nattah II* Court was very careful in articulating the particular claims that plaintiff can maintain, *see Nattah II*, 605 F.3d at 1056 (listing four specific claims against Secretary of the Army), and otherwise affirmed this Court's dismissal of all other claims. *See id.* at 1055 (noting that Court agrees only "with two of [Nattah's] claims of error"). Thus, any claims beyond the four set forth in the Court of Appeals' opinion remain barred by this Court's dismissal and determination that Mr. Nattah may not amend his original Complaint.

701(b)(1)(G)).  Arguments concerning the scope of a waiver of sovereign immunity are jurisdictional disputes that cannot be waived.  *Burkhart v. Wa. Metro. Area Transit Auth.*, 112 F.3d 1207, 1216 (D.C. Cir. 1997) (citing *Edelman v. Jordan*, 415 U.S. 651, 678 (1974)).  Thus, whether the military authority exception to the APA's waiver of sovereign immunity applies in this case must be examined even though the issue was not raised before the Court of Appeals.

The APA defines "agency" as "each authority of the Government of the United States," 5 U.S.C. § 701(b)(1), while the military authority exception excludes "military authority exercised in the field in time of war or in occupied territory" from that definition.  *Id*. at § 701(b)(1)(G). The D.C. Circuit has explained that this exception applies to "military commands made in combat zones or in preparation for, or in the aftermath of, battle."  *Doe v. Sullivan*, 938 F.2d 1370, 1380 (D.C. Cir. 1991).  While the military is not exempt as a whole from all wartime activities unrelated to armed conflict, *Vance v. Rumsfeld*, No. 06-cv-6964, 2009 U.S. Dist. LEXIS 67349, at *9 (N.D. Ill. July 29, 2009), the exception reflects a policy determination that acts undertaken by, or at the direction of, military officers or commanders in a time of war must be exempt from judicial review to avoid the debilitating effect the specter of judicial scrutiny might have in combat situations.  Whether a particular act is subject to this exception is a fact-intensive inquiry.  *Rosner v. United States*, 231 F. Supp. 2d 1202, 1218 (S.D. Fla. 2002).

Here, the gravamen of each of plaintiff's remaining claims against the Secretary is that the Army bought plaintiff as a slave from L-3 Services, improperly detained him, and forced him to participate in the war in Iraq.  *See* FAC ¶¶ 195, 200 (alleging Secretary violated Geneva Convention by "purchas[ing] and captur[ing] plaintiff" and "intentionally placing him on the battlefield"); *id*. at ¶ 261 (alleging Secretary violated 13th Amendment by "recruiting and transporting Nattah as a slave from Kuwait and through Iraq"); *id*. at ¶ 269 (alleging U.S.

military denied plaintiff's right to travel by "forcing him to accompany them into Iraq" and "den[ying] the Plaintiff the right to return home"); *id*. at 365 (alleging Secretary violated international law by "plac[ing plaintiff] on team with orders to infiltrate the Iraqi military lines prior to the Iraq war").  Assuming the truth of these allegations—which the Court must—it is clear that they were decisions made by commanders in the field in preparation for, and during the course of, combat in Iraq.  *See, e.g.*, FAC ¶¶ 102, 106, 200, 206, 240, 261, 365 (alleging that "military officials" purchased Mr. Nattah, that "the commander" ordered plaintiff to translate documents for military, and that unnamed "agents" of Secretary forced plaintiff to participate in war activities and violate international law).  The Court therefore lacks jurisdiction under the Act to review the decisions to recruit plaintiff into the military and to deploy him in the Iraq war and numerous combat situations.

In response, plaintiff points out that many of the relevant acts occurred prior to the beginning of the war in Iraq and emphasizes that Congress never officially declared war on Iraq.  Neither factor alters the Court's analysis here.  As to the latter issue, nothing in the text of the military authority exception requires that Congress actually declare war; instead, the statute uses the broader phrase "in time of war," which captures not only wars declared by Congress, but any period in which American military forces are preparing for, or engaged in, combat with enemy personnel.  *Sullivan*, 938 F.2d at 1380.  With respect to the acts occurring prior to the invasion of Iraq, the military authority exception does not turn on whether the acts in question occurred in the country being invaded.  To the contrary, the statute is worded to capture military authority exercised "in time of war *or* in occupied territory," 5 U.S.C. § 700(b)(1)(G); in other words, as long as the military acts in question occurred at a time of war, the precise location where those acts occurred is immaterial.  And even if this were not the case, plaintiff's allegations all concern

14

events occurring in 2003, FAC ¶ 97–117 (alleging employment began near January 17, 2003 and plaintiff returned to United States on July 22, 2003), while Congress' authorization for the invasion of Iraq—an initiation of war "in the same way it has initiated war since World War II," *Qualls v. Rumsfeld*, 357 F. Supp. 2d 274, 284 (D.D.C. 2005)—occurred in late 2002. Authorization for Use of Military Force in Iraq Resolution of 2002, Pub. L. No. 107-243, 116 Stat. 1498 (2002).  The military activities undertaken in early 2003 in Kuwait—just across the border from Iraq—were therefore preparations for invasion of, and combat in, Iraq and constitute activities "in the field in time of war" under the APA.  *See Qualls*, 347 F. Supp. 2d at 284 ("[T]he facts suggest that the United States is at war at the behest of Congress.").  Plaintiff's claims against the Secretary are therefore barred by the military authority exception to the waiver of sovereign immunity in the APA.

### 2.  Legal Sufficiency of the Claims

Federal defendants also argue that the grounds upon which this Court dismissed plaintiff's original claims against defendant L-3 Services—which remain entirely undisturbed by the D.C. Circuit, are also sufficient to warrant dismissal of plaintiff's claims against the Secretary.  The Court agrees.

### a.  Geneva Convention Claim

Plaintiff alleges that the Secretary of the Army violated the Geneva Convention by wrongfully detaining him and forcing him to serve as a soldier in the Iraq war.  FAC ¶¶ 191–215. "Absent authorizing legislation, an individual has access to courts for enforcement of a treaty's provisions only when the treaty is self-executing, that is, when it expressly or impliedly provides a private right of action."  *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774, 808 (D.C. Cir. 1984).  In *Nattah I*, this Court—relying in part on the D.C. Circuit's holding in *Holmes v. Laird*

in which it concluded that the corrective machinery in the Geneva Convention is non-judicial, 459 F.2d 1211, 1222 (D.C. Cir. 1972)—held that plaintiff could not set forth a claim for violation of the Geneva Convention against defendant L-3 Services. *Nattah I*, 541 F. Supp. 2d at 233. This holding also controls the outcome here as the Geneva Convention does not create a right of action for private individuals to enforce its terms.[5] *See In re Iraq & Afg. Detainees Litig.*, 479 F. Supp. 2d 85, 117 (D.D.C. 2007) ("[The Geneva Convention] is not a self-executing treaty that provides a private right for the plaintiffs to sue.").

### b.    Slavery Claim

Plaintiff's slavery claim is drawn from both the Thirteenth Amendment and several federal statutes, including the Trafficking Victims Protection Act ("TVPA") and several sections of Titles 18 and 42 of the United States Code. FAC ¶¶ 244–266. This Court in *Nattah I* previously dismissed identical "slavery" claims brought against defendant L-3 Services for failure to state a valid claim upon which relief may be granted, 541 F. Supp. 2d at 234–35, and the same rationale warrants an identical result here. First, neither the Thirteenth Amendment nor the TPVA creates a private right of action upon which recover may be had in a civil suit. Section 2 of the Thirteenth Amendment explicitly reserves for Congress the task of enforcing—though "appropriate legislation," U.S. Const. amend. XIII, § 2—the prohibition on slavery, and thus bars private suits in federal court to enforce Section 1 of the Amendment. *Holland v. Bd. of Trustees of Univ. of the Dist. of Columbia*, 794 F. Supp. 420, 424 (D.D.C. 1992). Similarly, the TPVA explicitly delegates enforcement powers to the President, 22 U.S.C. § 7108(a), thus barring private plaintiffs from litigating under the Act in federal court. *Nattah I*, 541 F. Supp. 2d at 234. Second, many of the sections of Title 18 cited by plaintiff are provisions of the criminal code,

---

[5] Just prior to this Court's decision in *Nattah I*, the Supreme Court held that a prisoner of war could assert rights in the Geneva Convention in a *habeas corpus* action against their captor government. *Nattah I*, 541 F. Supp. 2d at 233 n.9. However, this lone exception to the general rule is inapplicable here.

*see Nattah I*, 541 F. Supp. 2d at 234 (describing criminal statutes "for enticement of forced labor, sale into slavery, and use of provision of forced labor"), and private citizens cannot personally enforce criminal law.  *Walters v. Bank of Am.*, No. 09-cv-1060, 2009 U.S. Dist. LEXIS 49155, at *1 (D.D.C. June 8, 2009) (citing *Diamond v. Charles*, 476 U.S. 54, 64–65 (1986)).  Nor can plaintiff rely upon 18 U.S.C. § 1595(a), which provides civil remedies for victims of particular crimes.  As an initial matter, that statute was not enacted until the end of 2003, Pub. L. No. 108-193, 117 Stat. 2878 (2003)—after the alleged acts at issue in this case, *see* FAC ¶ 117 (stating that plaintiff returned to United States on July 24, 2003)—and cannot be applied retroactively.  *See Mazengo v. Mzengi*, No. 07 Civ. 756, 2007 U.S. Dist. LEXIS 99377, at *15 n.5 (D.D.C. Dec. 20, 2007) (noting "the absence of clear language indicating that the private right of action in § 1595 can be applied retroactively" in barring statute's application to conduct before its enactment) (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 272 (1994)).  Nor is there any basis for extra-territorial application of § 1595 to the alleged acts occurring abroad in this case.  *Nattah I*, 541 F. Supp. 2d at 234–35.  Finally, plaintiff's reliance on the provisions in Title 42 setting forth guarantees of equal rights, penalties for violations of civil rights, and abolishing peonage is misplaced, as each of these statutes expressly limit their reach to conduct in any "State or Territory," 42 U.S.C. §§ 1981(a), 1985 & 1994, and none of the conduct in this case took place in any United States jurisdiction.  In sum, plaintiff fails to identify any source of law capable of providing a basis for his slavery claim against the Secretary of the Army.

### c.    Right to Travel Claim

Plaintiff also alleges that "[t]he United States Military denied Plaintiff's right to travel by forcing him to accompany them to Iraq."  FAC ¶ 269.  Plaintiff fails to explain, however, how his conclusory allegations set forth a plausible claim that any defendant in this case violated his

right to travel under the constitution.  "Generally speaking, the constitutional right to travel refers to interstate travel," *Nattah I*, 541 F. Supp. 2d at 235, which is plainly not at issue here.  "The right to international travel is also a constitutionally protected right," but that right "is best described as the freedom to travel to foreign countries," and involves, *inter alia*, the right to own a passport.  *Id*. at 235–36 (citing *Haig v. Agee*, 453 U.S. 280, 306–07 (1981)).  Here, however, plaintiff makes no allegations that the Army prevented him from traveling to a foreign country; indeed, plaintiff alleges that he was permitted to travel to Kuwait in pursuit of his employment with L-3 Services.  FAC ¶ 24.  Thus, just as this Court found that plaintiff's allegations "failed to state a plausible basis for finding that [L-3 Services] violated" his right to travel, *Nattah I*, 541 F. Supp. 2d at 236, the Court here holds that plaintiff has failed to properly allege sufficient facts to permit the Court to find a violation of such rights by the Secretary of the Army.

### d.      Claims for Violations of International Law

In addition to his specific claim that the Secretary violated the Geneva Convention, the FAC also sets forth a more general claim for violation of international law, *see generally* FAC ¶¶ 354–75, in which plaintiff alludes to the Geneva Convention, the Hague Convention, the United Nations charter.  As set forth above, the Geneva Convention does not provide private litigants a right of action.  *See supra* Section IV.B.2.a.  Plaintiffs claims under the Hague Convention and the United Nations charter fail for this same reason.  "The Hague Conventions . . . cannot be construed to afford individuals the right to judicial enforcment" as "they have never been regarded as law private parties could enforce."  *Tel-Oren*, 726 F.2d at 810.  Similarly, the Court of Appeals has rejected the proposition that the United Nations charter creates rights which private individuals may enforce in litigation against nation-signatories.  *See Comm. Of U.S. Citizens Living in Nicaragua v. Reagan*, 859 F.2d 929, 936 (D.C. Cir. 1989) (declining to

entertain private suit under United Nations charter absent Congressional authorization for legal claim under the treaty).  In sum, "plaintiff's international law allegations [fail] to state a claim upon which this Court may grant relief."  *Nattah I*, 541 F. Supp. 2d at 233.

### 3.    Mootness

Finally, even if plaintiff had properly alleged claims for violations of the Geneva Convention, the Thirteenth Amendment, his right to travel, and international law, such claims— which are specifically limited to requests for non-monetary relief, *Nattah II*, 605 F.3d at 1057 ("Because Nattah's *non-monetary* claims against [the Secretary] would survive a motion to dismiss . . . we remand for further proceedings on those claims.") (emphasis added)—are moot. By his own allegations, Mr. Nattah admits that he is neither detained by the military nor being deployed in combat operations in Iraq or elsewhere.  *See* FAC ¶¶ 117–19 (chronicling plaintiff's visit to German hospital through his return "home").  Thus, the need for injunctive relief in which the Court either (1) forces the Secretary to direct the Army to release plaintiff or (2) enjoins the Secretary from directing the military to purchase and detain plaintiff, no longer exists.  Nor does plaintiff identify any specific equitable relief that is necessary at this time.  The Court thus holds that plaintiff's non-monetary claims against the Secretary are moot and must be dismissed.  *See ASPCA v. Ringling Bros. & Barnum & Bailey Circus*, 317 F.3d 334, 336 (D.C. Cir. 2003) ("In actions for injunctive relief, harm in the past . . . is not enough to establish a present controversy, or in terms of standing, an injury in fact.").

### C.    Mr. Nattah's Claims for Veterans Benefits and Back Pay

Though not set forth as a separate claim in the FAC, plaintiff also seeks administrative relief and asks the Court to enter declaratory judgments identifying him as a veteran and recognizing his entitlement to combat medals, payment of future medical expenses and back-pay

from the Department of Veterans Affairs.   FAC 84–85.  As an initial matter, these purported claims against the Secretary are not among those specifically remanded for consideration by this Court, *Nattah II*, 603 F.3d at 1056, and thus need not be considered by the Court.  *See Briggs v. Pa. R.R. Co.*, 334 U.S. 304, 306 (1948) ("[A]n inferior court has no power or authority to deviate from the mandate issued by an appellate court.").  Moreover, these requests for relief are not set forth in the FAC as specific causes of action, but instead merely appear among plaintiff's several requests for relief.  *See* FAC at 84–85 (requesting, *inter alia*, "[d]eclaratory judgment seeking classification as a veteran" and "[f]uture combat related medical expenses through Department of Veterans Affiars").  The failure to articulate independent grounds upon which such relief is warranted is fatal to plaintiff's claim.  *See Sanchez-Espinoz v. Reagan*, 770 F.2d 202, 209 (D.C. Cir. 1985) ("[D]ismissal of the . . . counts must be affirmed because of their failure to set forth a claim on which relief can be granted.").  Finally, there is no evidence or allegation in the FAC that plaintiff attempted to pursue his administrative remedies with the Army or any other branch of the United States' military forces prior to the filing of this suit.  *See* Declaration of Kenneth A. Clayton, attached as Ex. 1 to Fed. Reply, Nov. 3, 2010 [85-1] (declaring that searches of defendant's databases produced no records concerning Mr. Nattah, nor any evidence that Mr. Nattah filed requests or appeals for benefits with Army).  Plaintiff's failure to pursue his requested remedies with the relevant branch of the military—here, the Army—prior to filing this suit is fatal, *see Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986) ("'[A]n aggrieved military officer must first exhaus his administrative remedies with his particular service's Board for Correction of Military Records prior to litigating his claims in a federal court.'") (quoting *Knehans v. Alexander*, 566 F.2d 312, 315 (D.C. Cir. 1977)), and the Court cannot entertain his requests for relief.

### D.     L-3 Services' Motion to Dismiss

On appeal, the D.C. Circuit reversed this Court's dismissal of all claims against defendant L-3 Services after finding that the FAC set forth sufficient facts to have properly alleged a breach of an oral employment agreement between Mr. Nattah and L-3 Services.  *Nattah II*, 605 F.3d at 1057.  On remand, defendant requests dismissal of this breach of contract claim on three separate grounds: first, that the statute of limitations has expired, L-3 Mtn. at 9–11; second, that an oral employment agreement violates Virginia's statute of frauds, *id*. at 11–12; and third, that any oral contract that may have existed between L-3 Services and Mr. Nattah was superseded by subsequent signed documents stating that Mr. Nattah is an at-will employee.  *Id*. at 12–14.  The Court discusses each of the bases for dismissal in turn.

### 1.     Statute of Limitations

L-3 Services asserts that plaintiff's claim is untimely.  This suit, as a diversity action between a California resident, FAC ¶ 13, and a Virginia corporation, obligates the Court to apply the substantive state law in which it sits, *A.I. Trade Fin. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995)—including the state's choice-of-law rules, which specify which state's statute of limitations applies to the dispute.  *Tolbert v. Nat'l Harmony Mem'l Park*, 520 F. Supp. 2d 209, 211 (D.D.C. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)).  "As the District of Columbia choice of law rules 'treat statutes of limitations as procedural,' they 'mandate application of the District's own statute of limitations.'"  *Jovanovic v. U.S.-Algeria Bus. Council*, 561 F. Supp. 2d 103, 111 (D.D.C. 2008) (quoting *A.I. Trade*, 62 F.3d at 1458).  The District applies a three-year time limitation on claims for breach of contract, D.C. Code § 12-301(7), which is applicable to the alleged employment agreement here.  *Computer Data Sys., Inc. v. Kleinberg*, 759 F. Supp. 10, 15 (D.D.C. 1990).

"The general rule in the District is that a claim for breach of contract accrues 'when the contract is first breached.'" *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 146 F.3d 983, 992 (D.C. Cir. 1998) (quoting *Capitol Place I Assoc. L.P. v. George Hyman Constr. Co.*, 673 A.2d 194, 198 (D.C. 1996)).  Here, plaintiff alleges that by March 20, 2003, he had been sold into slavery by L-3 Services to the United States Army.  FAC ¶¶ 102–03.  Thus, the alleged breaches of contract by L-3 Services—including the failures to provide promised benefits to Mr. Nattah, as well as his wrongful termination—all must have occurred prior to the March 20, 2003 date set forth in the FAC.  Even construing the allegations in the FAC as favorably as possible for the plaintiff—that is, assuming that the breaches occurred at the latest date possible—the applicable statute of limitations still required claims for breach of contract to be filed by March 20, 2006.  Mr. Nattah did not file his complaint, however, until April 19, 2006—almost a month after the applicable time period elapsed.

Rather than defend the timeliness of his suit, plaintiff argues that defendant L-3 Services waived its ability to assert the statute of limitations defense by failing to raise the issue in its original motion to dismiss, and that, in any event, the time period should be tolled because it was impossible for plaintiff to file a suit due to his captivity and "disability."  P's L-3 Opp. at 5–6.  Plaintiff's suggestion of waiver is misplaced—statute of limitations arguments may be raised as an affirmative defense in a defendant's Answer, and until a party fails to interpose such a defense its ability to do so has not been waived.  *Long v. Howard Univ.*, 550 F.3d 21, 24 (D.C. Cir. 2008).  Here, defendant L-3 Services has not filed an Answer, and thus no waiver has occurred.  Moreover, the requirement that grounds for dismissal be set forth in a party's first motion to dismiss does not apply to Rule 12(b)(6) motions made prior to a responsive pleading, *see supra* Section IV.A, and thus defendant's statute of limitations defense is timely.  *See Daingerfield*

*Island Protective Soc'y v. Lujan*, 797 F. Supp. 25, 29 (D.D.C. 1992) ("While it is the general practice to raise a statute of limitations defense by motion under Rule 12(b)(6), it is not an error to fail to do so. . . . [T]his defense cannot be waived by the failure to interpose it in a motion under Rule 12."). Finally, with respect to Mr. Nattah's request for equitable tolling, the "District of Columbia law does not recognize an equitable tolling exception to the statute of limitations." *Johnson v. Marcheta Invs. Ltd. Pshp.*, 711 A.2d 109, 112 (D.C. 1998); *see also Sayyad v. Fawzi*, 674 A.2d 905, 906 (D.C. 1996); *Bond v. Serano*, 566 A.2d 47, 53 (D.C. 1989). "[F]ederal courts cannot apply the doctrine of equitable tolling differently than would the District of Columbia courts," *Williams v. District of Columbia*, 916 F. Supp. 1, 5 (D.D.C. 1996), and thus the Court finds that plaintiff's breach of contract claim must be dismissed as untimely.

## 2. Statute of Frauds

L-3 Services also raises the statute of frauds as a defense to plaintiff's breach of contract claim. L-3 Mtn. at 11–12. Under D.C. choice-of-law rules, a contract dispute is controlled by the law of the state with the "most substantial interest" in the dispute between the parties. *Shelton v. Ritz Carlton Hotel Co., LLC*, 550 F. Supp. 2d 74, 79 (D.D.C. 2008). Based on the allegations in the FAC here, Mr. Nattah learned of the employment opportunity with defendant L-3 Services in an undisclosed location, flew to Virginia to interview for the job, FAC ¶ 19, the parties reached the relevant agreement in Virginia, *id*. at ¶¶ 22–23, and Mr. Nattah then attended an "orientation workshop for applicants" in the state. *Id*. at ¶ 91. These connections—along with the absence of any connection to the District of Columbia—militate in favor of applying the law of Virginia law to this contract dispute. *See Helmer v. Doletskaya*, 393 F.3d 201, 206 (D.C. Cir. 2004) (applying D.C. law where contract was formed and executed in D.C.).

Under the law of Virginia, "[u]nless a . . . contract . . . is in writing and signed by the party to be charged . . . no action shall be brought in any of the following cases: . . . any agreement that is not to be performed within a year." Va. Code Ann. § 11-2. This statute of frauds provision bars enforcement of unwritten or oral employment contracts absent a defined period of employment lasting less than one year. *Graham v. Cent. Fid. Bank*, 428 S.E.2d 916, 917 (Va. 1993). Here, plaintiff alleges the existence of an oral agreement between the parties in which defendant L-3 Services' agents described several terms of an agreement to which plaintiff later assented. FAC ¶¶ 94–96. Though the period of employment remains undefined by the FAC, the alleged for-cause nature of the relationship renders the period potentially indefinite. *Falls v. Va. State Bar*, 397 S.E.2d 671, 672–73 (Va. 1990). Nor does "the possibility of a termination of such a contract for cause within its first year of performance . . . remove it from the requirements of the statute of frauds." *Graham*, 428 S.E.2d at 918. Thus, because the agreement was not in writing and set forth an employment relationship existing in perpetuity and terminable only for cause, the contract is in violation of the Virginia statute of frauds and cannot be enforced. *Walton v. Greenbrier Ford, Inc.*, 370 F.3d 446, 453 (4th Cir. 2004).

The alleged partial performance of the oral employment contract does not alter this conclusion. In Virginia, courts have articulated a limited partial performance exception to the statute of frauds that lies in equity rather than in law, *Runion v. Helvestine*, 501 S.E.2d 411, 414 (Va. 1998) (noting "principles upon which courts of equity have avoided the statute of frauds" where application of statute would "place [plaintiff] in a situation which does not lie in compensation"), and occasionally apply that exception to suits seeking equitable relief. *See, e.g.*, *id*. at 416 (seeking permanent injunction); *Glovier v. Dingus*, 4 S.E.2d 551, 555–56 (Va. 1939) (asking for partition of estate); *Grant v. Grant*, 67 Va. Cir. 412, 414–15 (Va. Cir. Ct. 2005)

(seeking transfer of interest); *Net Connection v. GWBEH, L.L.C.*, 67 Va. Cir. 150, 152 (Va. Cir. Ct. 2005) (requesting assignment of creditor interest).  By contrast, "[t]he doctrine of part performance is not available in Virginia in . . . actions at law for damages for breach of contract to take an oral agreement out of the statute of frauds." *Lance J. Marchiafava, Inc. v. Haft*, 777 F.2d 942, 946 (4th Cir. 1985) (citing *Porter v. Shaffer*, 133 S.E. 614, 627 (Va. 1926)).  Here, plaintiff's remedy for the alleged breach of contract is to request compensatory damages at law, and thus the statute of frauds bars his claim.

### 3.     Enforceability of the Written Agreement

L-3 Services asks the Court to revisit the question of whether the alleged oral contract between it and Mr. Nattah is enforceable on the terms set forth in the FAC in light of the offer letter and an acknowledgement of L-3 Services' policies, both of which were signed by Mr. Nattah and both of which state that the employment relationship as at-will.  L-3 Mtn. at 12–14. The Court declines to reach this issue.  As an initial matter, L-3 Services' argument does not address plaintiff's allegations that it breached the agreement by failing both to provide particular benefits and to fulfill promised conditions of his employment.  Thus, even if the relationship was at-will, and L-3 Services did not violate the contract when it ended Mr. Nattah's employment, such a conclusion is incomplete because it does not address L-3 Services' alleged breach of the other contractual conditions set forth in the FAC.  More importantly, the D.C. Circuit expressly found that the allegations in the FAC are sufficient to set forth a claim for breach of an oral agreement notwithstanding the subsequent signed offer letter provided by L-3 Services.  *See Nattah II*, 605 F.3d at 1058 ("[W]e conclude Nattah's complaint states a claim against L-3 for breach of its oral contract with Nattah.").  Here, the new addition of a second signed document— the acknowledgment of L-3 Services' policies—stating that the employment relationship was at-

will does not alter the D.C. Circuit's holding because the original offer letter and this second document say precisely the same thing.  The Court therefore declines to revisit the Court of Appeals holding regarding Mr. Nattah's ability to properly allege a breach of contract claim.

## V.  CONCLUSION

Based on the foregoing discussion, the Court GRANTS federal defendants' motion to dismiss the claims against the Secretary of the Army as barred by sovereign immunity and otherwise improper; GRANTS L-3 Services' motion to dismiss the breach of contract claim against it as untimely and barred by the Virginia statute of frauds; and DENIES plaintiff's motion for miscellaneous relief as lacking any basis in law.

A separate Order and Judgment consistent with these findings shall issue this date.

Signed by Royce C. Lamberth, Chief Judge, on March 18, 2011.